**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Michael A. WOLFFS,**
**Defendant-Appellant.**

No. 78–5216.

United States Court of Appeals,
Fifth Circuit.

April 26, 1979.

78

James J. Macie, Atlanta, Ga., for defendant-appellant.

D. L. Rampey, Jr., U. S. Atty., Edgar W. Ennis, Jr., Asst. U. S. Atty., Macon, Ga., for plaintiff-appellee.

Before GOLDBERG, SIMPSON and CLARK, Circuit Judges.

SIMPSON, Circuit Judge:

Defendant Michael A. Wolffs was convicted of one count of conspiring to possess with intent to distribute marijuana and conspiring to distribute marijuana in violation of 21 U.S.C. § 846, and two counts of using a communication facility (a telephone) in committing a felony in violation of 21 U.S.C. § 843(b). For the reasons stated hereinafter we reverse and remand for a new trial.

## I. STATEMENT OF FACTS

On December 14, 1977, Douglas A. Pugh, a member of the United States Army assigned to Fort Benning, Georgia, attended a party. Someone at this party told Pugh that Michael Wolffs, the defendant, was "running dope" and recently had received a large quantity of marijuana. Pugh was acquainted with Wolffs because in 1976 he had purchased an automobile from Wolffs, then employed as an automobile salesman at Barrington Ford, located in Columbus, Georgia. After attending the party Pugh conveyed this "tip" to Jimmy Griffin, a detective with the Muscogee County Sheriff's Department. Pugh did so because he had volunteered to serve as a confidential informer after having been arrested by Detective Griffin for drug-related offenses. Thereafter Pugh was instructed by Griffin to initiate a meeting with Wolffs for the purpose of discussing a purchase of a large quantity of marijuana.

On the afternoon of December 15, 1977, Pugh visited Wolffs at the Ford dealership to ask for assistance in locating a source of marijuana. Pugh testified that Wolffs immediately volunteered to arrange a meeting for Pugh with an Army captain who could

supply the twenty-five pounds of marijuana Pugh wanted to purchase. Wolffs testified that he did not *immediately* offer to arrange this meeting, that he only consented to arranging a purchase through the husband of a fellow employee after Pugh had made several requests over a period of four days, and that he helped Pugh because Pugh said his wife was pregnant and he was without sufficient funds for Christmas gifts. Pugh denied having mentioned his wife's pregnancy.

Pugh reported the information obtained during his conversation with Wolffs to Detective Griffin and Michael Johnson, a narcotics investigator for the United States Army Criminal Investigation Division ("CID"). Subsequently, Wolffs arranged a meeting between Pugh and Noel Paul Eason, the fellow employee's husband. This meeting took place on the evening of December 19, 1977, in a Columbus, Georgia restaurant. In attendance were Wolffs, Eason, Pugh, and CID Investigator Johnson, who was posing as a prospective marijuana purchaser. This led to a transaction in Newnan, Georgia on December 22, 1977, where Noel Paul Eason and three others,[1] later indicted as co-conspirators, exchanged twenty-four pounds of marijuana for $8,250.00. Once the transaction was consummated, CID Investigators Johnson and Lee, who had acted as buyers, disarmed and detained two of the conspirators until personnel of the sheriff's departments arrived, handcuffed the suspects, and transported them to jail. Personnel of the Muscogee and Coweta Counties Sheriff's Departments, who had been conducting surveillance of the sale, arrested the other co-conspirators in the immediate vicinity of the transaction. Wolffs, not present, was arrested later.

Prior to trial defendant moved to suppress the marijuana and purchase money seized as well as the testimony of various individuals.[2] Defendant asserted that this evidence and testimony should be suppressed because obtained in violation of the Posse Comitatus Act, 18 U.S.C. § 1385 (1976), and applicable Army regulations. After a hearing on this motion, the district court denied the motion to suppress. The alleged co-conspirators, with the exception of Wolffs, thereafter changed their pleas from not guilty to guilty. The charges against defendant Wolffs proceeded to trial, where the jury returned guilty verdicts on all three counts charged.

## II. ENTRAPMENT

Defendant's initial contention is that the district court committed reversible error in instructing the jury on the defense of entrapment. Defendant asserts that the charge given did not properly assign to the government the burden of proving defendant's predisposition to commit the offenses charged beyond a reasonable doubt. In response, the government maintains that an entrapment instruction was not even required since defendant's own testimony demonstrated that in facilitating a marijuana transaction his motivation was the opportunity for self-aggrandizement (i. e. defendant's cooperation would generate goodwill and lead to future automobile sales). Alternatively, the government argues that even if there was sufficient evidence to charge the jury on the affirmative defense of entrapment, the instruction given correctly stated the law and in no way prejudiced substantial rights of defendant.

### A. *Raising the Defense*

"Entrapment occurs 'when the criminal design originates with the officials of the government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute.'" *United States v. Buckley,* 586 F.2d 498, 501 (5th Cir. 1978), *cert. denied,* — U.S. —, 99 S.Ct. 1792, 60 L.Ed.2d 242

---

1. The three co-defendants, all of whom pleaded guilty along with Noel Paul Eason, were Jeffrey Kremer, Phillip Stiles, and Knute Eason, Noel Paul Eason's brother.

2. The defendant sought to suppress the testimony of the law enforcement officers and CID personnel who participated in the surveillance, detention, and arrest of the co-conspirators.

(1979), *quoting Sorrells v. United States*, 287 U.S. 435, 442, 53 S.Ct. 210, 213, 77 L.Ed. 413 (1932). *See generally Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976) (defense of entrapment not available where defendant concedes a predisposition to commit the crime in question); *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973) (no entrapment as a matter of constitutional or statutory law where government agent provided defendant with essential and difficult-to-obtain ingredient for manufacture of methamphetamine); *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958) (entrapment established as a matter of law where government informer made repeated requests of defendant to obtain narcotics, and defendant capitulated, after initial refusals, only when informer resorted to sympathy).

■ Where the defense of entrapment is at issue the court's analysis is bifurcated, dealing with two factual questions.

[I]n such cases two questions of fact arise: (1) did the agent induce the accused to commit the offense charged in the indictment; (2) if so, was the accused ready and willing without persuasion and was he awaiting any propitious opportunity to commit the offense. On the first question the accused has the burden; on the second the prosecution has it.

*United States v. Benavidez*, 558 F.2d 308, 310 (5th Cir. 1977), *quoting United States v. Sherman*, 200 F.2d 880, 882–83 (2d Cir. 1952) (Hand, J.). *Accord Pierce v. United States*, 414 U.S. 163, 166 (5th Cir.), *cert. denied*, 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425 (1969).

■ In order to raise the defense of entrapment the defendant has the *production burden*—the initial burden of going forward with evidence of governmental involvement and inducement. *United States v. Buckley*, 586 F.2d at 501; *United States v. Groessel*, 440 F.2d 602 (5th Cir.), *cert. denied*, 403 U.S. 933, 91 S.Ct. 2263, 29 L.Ed.2d 713 (1971). The ultimate burden of proof, however, the risk of nonpersuasion, is always on the government. *United States v. Tate*, 554 F.2d 1341, 1344 (5th Cir. 1977).

■ The sufficiency of defendant's evidence of governmental involvement is a question of law for the court in the first instance, not for the jury. *United States v. Tate*, 554 F.2d at 1344. Once the defendant has sustained this burden, however, the issue of entrapment is a question of fact for the jury. *Buckley; Groessel*.

■ To satisfy the production burden, defendant must adduce *some evidence, more than a scintilla*, which tends to show government inducement and lack of predisposition to commit the offenses charged. *Buckley*, 586 F.2d at 501; *United States v. Timberlake*, 559 F.2d 1375, 1379 (5th Cir. 1977); *Benavidez*, 558 F.2d at 310. In determining whether this burden has been satisfied, we must accept the testimony most favorable to the defendant. *Buckley*, 586 F.2d at 501; *Benavidez*, 558 F.2d at 309. Even evidence presented in the prosecution's case may go toward satisfaction of defendant's production burden. *Benavidez*, 558 F.2d at 310, citing *Notaro v. United States*, 363 F.2d 169, 174 & n. 6 (9th Cir. 1966). Accepting the testimony most favorable to defendant, we conclude there was sufficient evidence to submit the entrapment question to the jury.

■ The testimony most favorable to defendant showed that: Wolffs previously was never involved in the sale of marijuana; Pugh initiated contact with Wolffs for the purpose of arranging a sale of marijuana at the direction of Detective Griffin; Wolffs only complied with Pugh's requests to help him find a source for marijuana after Pugh made several requests over four days; Wolffs lent Pugh assistance out of human kindness, Pugh having told Wolffs that he needed money because he was on leave from the Army with a pregnant wife and without any money for Christmas gifts; there was no previous dealing or meetings between Wolffs and Eason, the source, prior to the December 19th meeting at the Columbus restaurant; and, Wolffs met Eason through Eason's wife who, in the course

of a *chance* conversation on December 17th, told Wolffs that her husband was a marijuana supplier.

The government emphasizes that defendant's own testimony indicates that he decided to help Pugh because assistance might lead to future car sales. Consequently, the government's argument proceeds, Wolffs' decision to help Pugh was volitional and not induced by Pugh. The government misconceives the essence of the principle of entrapment, namely, predisposition to commit the offense charged. It is true that Wolffs admitted, in part, to having agreed to help Pugh because of possible future automobile sales; however, the testimony most favorable to defendant might have been sufficient for jurors, properly instructed, to have entertained a reasonable doubt as to whether defendant was predisposed to engage in the sale of marijuana prior to meeting Pugh on December 15th. The district court would have erred had it not instructed the jury on the defense of entrapment. The propriety of the instruction given, therefore, must be examined next.

B. *Instructing the Jury*

The district court charged the jury on the issue of entrapment as follows:

So, if you, as the Jurors, having heard the evidence in the case, conclude that before anything at all occurred respecting the alleged offense involved in this case, the defendant was ready and willing to commit crimes such as those charged in the indictment when a favorable opportunity was offered and the Government merely offered him the opportunity, then the defendant is not entitled to the defense of unlawful entrapment. If, on the other hand, you find that the defendant had no previous intent or purpose to commit any offense of the character charged and did so only because he was induced, or persuaded by some Agent of the Government, then the prosecution would have seduced an innocent person and the defense of entrapment would be a good defense, and of course, in that event the defendant should be acquitted.

Record, Vol. 3 at 214–15.[3]

**3.** This instruction was immediately preceded by the following general discussion of the defense of entrapment.

Now, in that connection, the defendant has come in the trial of this case and his counsel, in closing argument, has argued to you that the defendant was led, was illegally and improperly led into doing the things which he did. Now, that is known as a defense of unlawful "entrapment". That is what that is called. "Entrapment". So, it is necessary that I charge you with regard to that principle of law because the defendant offers the defense of entrapment. *I charge you that where a person has no previous intent or purpose to violate the law but is induced or persuaded by Law Enforcement Officers to commit a crime, he is entitled to the defense of unlawful entrapment, because the law, as a matter of policy, forbids a conviction in such a case. On the other hand, where a person already has the readiness and the willingness to break the law, the mere fact that Government Agents*, either in the guise of an informer or police officers or what not, *who simply provide what appears to be a favorable opportunity for that person to commit the crime, is no defense.* When, for example, the Government has reasonable grounds for believing that a person is engaged in illegally dealing in narcotics, it is not unlawful entrapment for a Government Agent to pretend to be someone else and to offer, either directly or through an informer or other decoy, to purchase narcotics from or through such suspected person. In other words, that is a technique that is used by Law Enforcement Officers. It's used by Federal Officers. It's used by State Officers. It's used by all types of Law Enforcement Officers. When Government Agents simply provide an opportunity for a person who is suspected of being engaged in criminal activity, when they simply provide him with that opportunity, that is not unlawful entrapment. So, I repeat, if the defendant in this case had no previous intent or purpose to violate the law but was induced or persuaded to do so by Law Enforcement Officers, then that would be unlawful entrapment. On the other hand, if he already had the readiness and the willingness to break the law, the mere fact that a Government Agent or Government Informer gave him what appeared to him to be a favorable opportunity to do so and then he did engage in the illegal activity, then that would not be unlawful entrapment and he would not be entitled to that defense.

Record, Vol. 3 at 212–14 (emphasis added).

Defendant made timely exceptions to the court's instructions and refusal to give defendant's requested charge.[4]

■ The issue squarely[5] before this Court is whether the standards enunciated in *Notaro v. United States*, 363 F.2d 169 (9th Cir. 1966), should govern jury instructions on the defense of entrapment. We hold that *Notaro* does govern the case sub judice and requires reversal.

In *Notaro* the defendant sought reversal on the ground that the entrapment instructions given to the jury were misleading and prejudicially erroneous. The challenged instructions read as follows:

"If, then, the jury should find *beyond a reasonable doubt* from the evidence in the case that before anything at all occurred respecting the alleged offense involved in this case, the accused was ready and willing to commit crimes such as charged in the indictment, whenever opportunity was offered and that the Government agents did no more than offer the opportunity, the accused is not entitled to the defense of unlawful entrapment.

"*On the other hand, if the jury should find from the evidence in the case that the accused had no previous intent or purpose to commit any offense of the character here charged, and did so only because he was induced or persuaded by some agent of the Government, then the defense of unlawful entrapment is a good defense and a jury should acquit the defendant.*"

363 F.2d at 173 (emphasis in original, footnote omitted).

In reversing defendant's conviction on the basis of the erroneous instruction the *Notaro* court said:

When a party has the burden of proof as to a factual issue, it cannot be proper that instructions pertaining to [that] issue are so vague or ambiguous as to permit of misinterpretation by the jury of the standard which is to be applied. The desire of a careful judge to avoid language which to him may seem unnecessarily repetitive should yield to the paramount requirement that the jury in a criminal case be guided by instructions framed in language which is unmistakably clear.

363 F.2d at 175. Thereafter, the *Notaro* court held the first paragraph of the instruction correct but the second faulty in several respects. The court found it reasonably probable that the language "On the other hand, if the jury should find from the evidence," confused the jury. Employment of the words "On the other hand" in the critical paragraph, without guidance on burden of proof, could have created the impression in lay minds that defendant carried the burden as to the positive elements of his defense. The instruction's "should find from the evidence" language was also improper because the defendant was entitled to acquittal not only if the jury *found* that he had *no* previous intent or purpose to commit the offense, but also if the jury *entertained reasonable doubt* about defendant's predisposition. 363 F.2d at 175–76.

---

**4.** The charge requested by defendant read as follows:

Ladies and gentlemen of the jury, I charge you that in this case the government, through the prosecutor, has the burden of establishing, beyond a reasonable doubt, that the defendant, Michael Wolffs, was predisposed to commit the offenses charged in the indictment; that is, that he was ready and willing, without persuasion by an agent for the government.

Record, Vol. 1 at 52.

**5.** On several occasions this Court has indicated, by way of dicta, that *Notaro* standards are the accepted rules for the Fifth Circuit. *See United States v. Benavidez*, 558 F.2d 308,

310 (5th Cir. 1977) (rule set forth in *Notaro* is the accepted rule and, although never specifically adopted by the Fifth Circuit, should be followed); *United States v. Harrell*, 436 F.2d 606, 612 & n. 6 (5th Cir. 1970) (court would have followed *Notaro* and reversed for trial court's erroneous instruction; however, question pretermitted since reversal based on other grounds), *appeal after remand*, 458 F.2d 655 (5th Cir.), *cert. denied*, 409 U.S. 846, 93 S.Ct. 49, 34 L.Ed.2d 86 (1972); *cf. United States v. Smith*, 588 F.2d 111, 116 n. 26 (5th Cir. 1979) (in rejecting defendant's contention that entrapment instruction was erroneous, court observed that instruction given was as clear as the instruction approved in *Notaro* ).

The instruction given by the district court in the case at bar never mentions the quantum of proof required (beyond a reasonable doubt) and upon whom this burden falls. For those reasons it was prejudicially erroneous.

■ The language of an entrapment instruction must unmistakably apprise the jury that the burden is upon the government to prove beyond a reasonable doubt that, before anything at all occurred respecting the alleged offense for which the defendant is being prosecuted, the defendant was ready and willing to commit such crimes whenever an opportunity was afforded, and that government agents did no more than offer the opportunity. The instruction also must be unmistakably clear in informing the jury that if the evidence in the case leaves a reasonable doubt as to whether defendant had the predisposition to commit an offense of the character charged, apart from the government inducement or persuasion, the defendant must be found not guilty.

■ The government also argues on this appeal that the district court's general charge on the government's burden of proving guilt beyond a reasonable doubt cures any defect with the specific portion of the charge dealing with entrapment. This argument was also made and rejected in *Notaro.*

In reaching our conclusion, we have been mindful of [our] obligation to consider the instructions in their entirety. The jury was properly informed, in a general instruction, as to the burden of proof which rested upon the prosecution; however, we cannot assume that it carried the advice of the general instruction into application to the instruction emphasizing the specific elements of the defense [of entrapment]. The possibility that there was confusion or misunderstanding is strengthened, not eliminated, by view of the instructions as a whole. 363 F.2d at 176. We find the same to be true in the case sub judice. The absence of any "reasonable doubt" language within or in close proximity to the specific instruction on entrapment reasonably could have confused the jurors into believing that a lesser standard of proof applied to the defense. An example of "reasonable doubt" language sufficiently connected to the entrapment instruction is found in *United States v. Smith,* 588 F.2d 111 (5th Cir. 1979).

In *Smith* the defendant sought reversal of his conviction for drug-related offenses, claiming that the trial judge's charge on entrapment did not properly instruct the jury on the burden of proof. This point was considered under the "plain error" doctrine of Rule 52(b), Fed.R.Crim.P., because no objection had been made at trial.

The instruction given read as follows:

If the jury finds beyond a *reasonable doubt from the evidence in this case that the defendant . . . committed either of the two acts charged but also finds that before any such offense occurred* the Defendant . . . was ready and willing to commit such offense whenever the opportunity was afforded, and that the Government Agents did no more than offer the opportunity for the commission of such offense, the jury must find that the Defendant . . . was not a victim of entrapment . . . .

588 F.2d at 116 (emphasis in original). Defendant asserted on appeal that the trial judge should have repeated the words "beyond a reasonable doubt" after the words "but also finds." The trial court's failure to do so, defendant argued, allowed the jurors to apply any standard of proof they desired to the entrapment issue.

In rejecting this contention, and holding there was no "plain error" warranting reversal on this issue, this Court concluded that the charge given clearly told the jury that unless the government proved disposition beyond a reasonable doubt, defendant was to be acquitted. This Court also went on to say, "especially in the face of appellant's burden of proving plain error, F.R. Crim.P. 52(b)—that all of the instructions on entrapment and burden of proof,[28] read as a whole, sufficiently informed the jury how to weigh the evidence and apply the

burden of proof." *Id.* at 117 (two footnotes omitted). In footnote 28 this Court quoted the trial judge's general reasonable doubt charge. We do not find the result or reasoning in *Smith* inconsistent with our decision today. *Smith's* result was obtained under a "plain error" analysis, whereas the lower standard of reversible error permits us to find that the instruction given in the case at bar was erroneous notwithstanding the trial judge's general instruction on the government's burden to prove defendant's guilt beyond a reasonable doubt. In addition, the entrapment instruction given in the case at bar would fall below the standard applied in *Smith* for there is no mention of the reasonable doubt standard at all. In *Smith* reasonable doubt language was employed within the specific entrapment instruction, although perhaps not in the most effective location.[6]

We conclude, therefore, that defendant's conviction must be reversed because of the erroneous entrapment instruction. Upon

retrial, the trial judge is not compelled to repeat the reasonable doubt standard in every phase of the entrapment instruction; however, he "should yield to the paramount requirement that the jury in a criminal case be guided by instructions framed in language which is unmistakably clear." *Notaro v. United States*, 363 F.2d 169, 175 (9th Cir. 1966).

## III. INVOLVEMENT OF MILITARY PERSONNEL

Defendant also asks this Court to reverse his conviction on the basis that the district court erred in denying his motion to suppress. Defendant maintains that the marijuana and purchase money, as well as the testimony of various individuals, should have been suppressed because the pervasive involvement of the United States Army Criminal Investigation Division Command's agents violated the Posse Comitatus Act, 18 U.S.C. § 1385 (1976), and Army Regulation 195–2.[7] This contention raises two issues:

**6.** The government contends that reversal because of the trial court's entrapment instruction would be inconsistent with this Court's decision in the second *Harrell* decision (*Harrell II*), *United States v. Harrell*, 458 F.2d 655 (5th Cir.), *cert. denied*, 409 U.S. 846, 93 S.Ct. 49, 34 L.Ed.2d 86 (1972).

In *Harrell II* this Court found the entrapment instruction given was not erroneous. That instruction read as follows:

*The burden of proof in this case is on the Government to prove that there was no unlawful or illegal entrapment, and to do that, as they are required to do other things, to do it with the evidence beyond a reasonable doubt. . . . If, then, you jurors should find from the evidence that, before anything at all occurred respecting the offenses involved here, Harrell was ready and willing to commit crimes such as those charged in this indictment whenever the opportunity presented itself, and the Government merely offered him that opportunity, then Harrell is not entitled to the defense of entrapment. If, on the other hand, you jurors should find that Harrell had no previous intent or purpose to commit any offense as charged in the indictment, and did so only because he was induced or persuaded by some agent of the Government; then the prosecution, the law says, has seduced an innocent person, and the defense of entrapment is a good defense and the defendant should be acquitted.*

458 F.2d at 656–57 (emphasis in original).

One member of the *Harrell II* panel, Judge Thornberry, found the instruction there involved faulty under *Notaro* standards, observing:

In both cases . . . the second part of the charge, pointing directly to the elements of the defense . . . likely created the impression in lay minds that appellant carried the burden on the positive elements of his defense. I thus see no distinction between *Notaro* and the instant case.

458 F.2d at 659 (Thornberry, J., dissenting).

We hold that the instruction given by the district court in this case was erroneous because it failed, in any manner, to apprise the jury of the quantum of proof required (beyond a reasonable doubt) and upon whom this burden fell (the prosecution).

We are not unmindful of our prior decisions in which instructions similar to that given by the district court here were found to be proper. *See, e. g., Eisenhardt v. United States*, 406 F.2d 449, 451 & n. 4 (5th Cir. 1969); *Kivette v. United States*, 230 F.2d 749, 754 (5th Cir. 1956), *cert. denied*, 355 U.S. 935, 78 S.Ct. 419, 2 L.Ed.2d 418 (1958). We cannot and do not overrule those decisions. See discussion Part IV *infra*. However, the continuing vitality of these decisions must be questioned in light of the more recent and better reasoned decisions of this Court in *Harrell I* and *Benavidez*. We choose to follow these later decisions.

**7.** The Posse Comitatus Act provides as follows:
Whoever, except in cases and under circumstances expressly authorized by the Constitu-

(1) whether CID agents' activities violated the Posse Comitatus Act and/or Army Regulation 195–2; and (2) whether an exclusionary rule should be applied if there was a violation.

■ We pretermit discussion of whether there was a violation of the statute or regulation. We need not decide that complex and difficult issue [8] because, assuming without deciding that there was a violation, application of an exclusionary rule is not warranted. If this Court should be confronted in the future with widespread and repeated violations of the Posse Comitatus Act an exclusionary rule can be fashioned at that time. *Accord United States v. Walden*, 490 F.2d 372 (4th Cir.), *cert. denied*, 416 U.S. 983, 94 S.Ct. 2385, 40 L.Ed.2d · 760 (1974) (although court found use of marines as undercover investigators violated Navy regulations and spirit, but not letter, of Posse Comitatus Act, exclusionary rule not applied because such an extraordinary remedy not required until such time as repeated cases involving military enforcement of civil laws demonstrates a need for such sanction); *State v. Danko*, 219 Kan. 490, 548 P.2d 819 (1976) (although court found violation of Posse Comitatus Act where military officer, on joint patrol with civilian police officer, assisted in search of automobile occupied by defendant, no exclusionary rule applied because first instance in State of Kansas of violation of Act).

The district court therefore did not err in denying defendant's motion to suppress.

## IV. HEARSAY REPUTATION TESTIMONY

■ Defendant's final basis for seeking reversal is the admission, over timely objection, of testimony by Detective Griffin that "through informants" he had learned that defendant had a reputation for "dealing in marijuana". Detective Griffin had been recalled to offer additional testimony after defendant testified as to his own lack of predisposition and supported his testimony with five other character witnesses. Defendant's objection to the admission of Detective Griffin's testimony was that it was hearsay and highly prejudicial. The testimony was not corroborated and the informants were never produced or identified.

Defendant recognizes that the admissibility of such testimony is firmly established in this circuit where a defendant has raised the affirmative defense of entrapment and has adduced testimony of his lack of predisposition through evidence of reputation for good character. However, defendant asks this Court to reexamine and reject its own standards.

Until decided otherwise by this Court *en banc* we are bound by Fifth Circuit authority that such testimony is admissible. *United States v. Daniels*, 572 F.2d 535, 539 (5th Cir. 1978) (court held that testimony about information in sheriff department's anonymous informant's investigative report to the effect that defendant was heroin trafficker was admissible even though witness' testimony constituted double level hearsay as to the two reports). "[O]ne panel of this court does not overrule the decisions of another, much less the decisions of many others." *Malone v. Alabama*, 514 F.2d 77, 80 (5th Cir.), *cert. denied*, 423 U.S. 990, 96 S.Ct. 403, 46 L.Ed.2d 309 (1975).

tion or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both. 18 U.S.C. § 1385 (1976). Posse comitatus has been defined to mean "[t]he power or force of the county. The entire population of a county above the age of fifteen, which a sheriff may summon to his assistance in certain cases; as to aid him in keeping the peace, in pursuing and arresting felons, etc." Black's Law Dictionary 1324 (rev. 4th ed. 1968).

8. For a discussion of the purpose underlying the Posse Comitatus Act and various tests for determining when the Act has been violated see *United States v. McArthur*, 419 F.Supp. 186 (D.N.D.), *aff'd sub nom. United States v. Casper*, 541 F.2d 1275 (8th Cir. 1976), *cert. denied*, 430 U.S. 970, 97 S.Ct. 1654, 52 L.Ed.2d 362 (1977). *See generally* Meeks, *Illegal Law Enforcement: Aiding Civil Authorities in Violation of the Posse Comitatus Act*, 70 Mil.L.Rev. 83 (1975); Furman, *Restrictions Upon Use of the Army Imposed by the Posse Comitatus Act*, 7 Mil.L.Rev. 85 (1960).

The district court, therefore, did not commit reversible error in admitting Detective Griffin's rebuttal testimony that "through informants" he had learned that defendant had a reputation for "dealing in marijuana".

## V. CONCLUSION

The judgment of conviction below is reversed for further proceedings not inconsistent herewith.

REVERSED.