**UNITED STATES of America, Appellee,**

v.

**Jason LUSTIG and Kevin Lee, Defendants,**

**Kevin Lee, Defendant–Appellant.**

**No. 56, Docket 88–1157.**

United States Court of Appeals, Second Circuit.

Argued Sept. 14, 1988.

Decided Jan. 6, 1989.

Joseph J. Terranova, Buffalo, N.Y., for defendant-appellant.

Michael A. Battle, Asst. U.S. Atty., for W.D.N.Y., Buffalo, N.Y. (Dennis C. Vacco, U.S. Atty., for W.D.N.Y., Buffalo, N.Y., of counsel), for appellee.

Before LUMBARD and MAHONEY, Circuit Judges, and CHOLAKIS, District Judge.*

PER CURIAM:

Kevin Lee appeals from a judgment of conviction entered on February 3, 1988 after a jury trial before John T. Curtin, *Chief Judge*, in the United States District Court

---

* The Hon. Con. G. Cholakis, United States District Judge for the Northern District of New York, sitting by designation.

for the Western District of New York. Lee was convicted of four counts of unlawful distribution of marijuana in violation of 21 U.S.C. § 841(a)(1) (1982). On appeal, Lee claims that the district court erred in denying his motion for acquittal pursuant to Fed.R.Crim.P. 29(a). The claimed basis for acquittal was that the Postal Service investigation that led to Lee's indictment exceeded the authority granted to the Postal Service by 39 U.S.C. § 404(a)(7) (1982) to investigate "postal offenses." We find the actions of the postal inspectors in their investigation of Lee wholly proper. We therefore affirm the judgment of conviction.

Kevin Lee was a postal employee at the general post office located at 1200 William Street in Buffalo, New York. His prosecution arose from an investigation by United States postal inspectors into the sale of controlled substances by postal employees at the William Street post office. At trial, Lewis Outlaw, a government informant who was also a postal employee at the William Street post office, testified for the government concerning purchases of marijuana from Lee during the summer of 1987.

Specifically, Outlaw testified that on June 19, 1987, he contacted Lee at the post office and planned a subsequent meeting where Outlaw was to obtain marijuana from Lee for which payment had previously been made by Outlaw. During the meeting later that day, Lee was observed by postal inspectors entering Outlaw's car, in which Lee handed a bag containing marijuana to Outlaw. Outlaw also testified that on the afternoon of June 25, 1987, he met Lee on the main floor of the William Street post office and gave Lee $1,250 in payment for a later exchange of marijuana. Several postal inspectors observed the incident. The evidence also established a transfer of money from Outlaw to Lee in payment for marijuana at a local bar on July 9, 1987, and a subsequent purchase of marijuana from Lee by Outlaw at Lee's residence.

In sum, the evidence presented at trial clearly established that Lee sold marijuana to Outlaw on four separate occasions. The actual exchanges of marijuana did not occur on postal property. Rather the consummation of the sales took place at such locations as Outlaw's automobile, a local bar and Lee's residence. Lee was never observed with controlled substances on postal property during the investigation. On several occasions, however, Lee, during normal working hours at the post office, made arrangements for the sale of marijuana to fellow postal employee Outlaw.

United States Postal Inspector Robert A. Williams, the coordinator for narcotics investigations for the Postal Service's Buffalo district, was assigned to oversee this investigation. Inspector Williams testified at trial that his primary responsibility as narcotics coordinator was to investigate the distribution and sale of narcotics by postal employees and to focus on the use of drugs by employees on the mailroom floor. Williams further testified that his investigations initially centered on the actual sale of controlled substances on postal property. He would, however, follow up on situations like that in the instant case, where arrangements were made on postal property but the actual sale was consummated elsewhere.

At the conclusion of the government's case, Lee moved for a judgment of acquittal pursuant to Fed.R.Crim.P. 29(a), claiming that this investigation exceeded the Postal Service's statutory authority "to investigate postal offenses." 39 U.S.C. § 404(a)(7) (1982). The district court denied this motion. Noting that dealing in contraband substances among postal employees would certainly have a deleterious effect upon morale, safety and efficient operation of the Postal Service, the district court ruled that the Postal Service investigators had not only a right, but a responsibility, to go forward with this investigation.

We agree. The term "postal offense" is not defined in either Title 39 or any published opinion of a federal court. A claim very similar to the one raised on this appeal, however, was addressed in an unreported decision, *United States v. Schindler*, No. 85–00104 (M.D.Pa. June 28, 1985). Schindler was a postal employee who nego-

**43**

tiated a sale of cocaine with another postal employee while on duty and on postal property. Schindler, like Lee, actually distributed the contraband substance after work at his apartment.

In *Schindler*, the district court denied a motion to dismiss the indictment. As here, the motion contended that the postal inspectors had exceeded their authority. The court concluded, however, "that the inspectors were pursuing a 'postal offense' and were acting within the scope of their statutory authority, even though they departed the post office premises to do so." *Id.* at 3–4.

■ We find the holding in *Schindler* persuasive and applicable to this case. While serving as a postal employee on Postal Service property, Lee negotiated, and accepted money for, the sale of marijuana. This more than suffices to render Lee's actions a "postal offense" which the Postal Service can and should investigate. *Cf.* 39 C.F.R. § 232.1(g) (1987) (prohibiting the sale or use of any controlled substance on postal premises).

■ Even if we were to reach a contrary conclusion, there would be no basis for reversal of Lee's conviction. *See United States v. Walden*, 490 F.2d 372, 376–77 (4th Cir.) (neither reversal of conviction nor application of exclusionary rule warranted by unauthorized use of Navy personnel in investigation resulting in indictment), *cert. denied*, 416 U.S. 983, 94 S.Ct. 2385, 40 L.Ed.2d 760 (1984); *see also United States v. Wolffs*, 594 F.2d 77, 85 (5th Cir.1979) (assuming use of military personnel in investigation unauthorized, application of exclusionary rule inappropriate). Both *Walden* and *Wolffs* stress that sanctions such as reversal of conviction or exclusion of evidence might be appropriate only in the event of widespread or repeated violations. *Walden*, 490 F.2d at 377; *Wolffs*, 594 F.2d at 85 (citing *Walden*). Even then, any invocation of our supervisory power would have to take into account the rule of harmless error. *See United States v. Hasting*,

461 U.S. 499, 505–09, 103 S.Ct. 1974, 1978–80, 76 L.Ed.2d 96 (1983).

AFFIRMED.