**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Gerett JONES, Defendant–Appellant.**

**No. 93–5224.**

United States Court of Appeals,
Fourth Circuit.

Argued Sept. 27; 1993.

Decided Dec. 21, 1993.

Randolph Brian Monchick, Asst. Federal Public Defender, Raleigh, NC, (argued), for defendant-appellant.

David Paul Folmar, Jr., Asst. U.S. Atty., Raleigh, NC, argued (James R. Dedrick, U.S. Atty., on brief), for plaintiff-appellee.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and WILKINSON and WILLIAMS, Circuit Judges.

## OPINION

WILKINSON, Circuit Judge:

In this case we must ask whether a postal inspector exceeded the scope of his statutory authority under 39 U.S.C. § 404(a)(7) when he investigated drug activities among postal employees that did not occur wholly on postal property. We hold that he did not, and we affirm the judgment of the district court.

### I.

The facts of this case are essentially undisputed. Appellant Gerett Jones worked for the United States Postal Service in Raleigh, North Carolina from December 1991 until mid–1992. Jones worked as a mail handler in the General Mail Facility, where he met Roosevelt Clark, another postal employee. In addition to being a mail handler, Clark served as a confidential informant for the Postal Service. Clark had been placed in the Raleigh facility by postal inspector Rick Bowen, who directed Clark to gather information about narcotics activities at the site.

Clark soon began to suspect that Jones might be involved in drug transactions. The first indication came when Clark and Jones were together in Clark's apartment. Jones told Clark that they "could make a lot of fast money with cocaine" and that he "had connections." Jones and Clark then had several conversations at work regarding Jones' ability to procure drugs and the times when the purchases could take place.

When Clark reported to inspector Bowen that Jones was probably a drug distributor, Bowen decided to tape a conversation between Jones and Clark. On February 18, 1992, Bowen wired Clark with a transmitter and directed him to get Jones onto postal property and engage him in a conversation about drugs. In the course of the resulting conversation, Jones spoke of an earlier cocaine sale, told Clark that he could make "money from the start," and identified an

individual who "would front [Jones] the cocaine."

Bowen subsequently arranged to have Clark fund drug purchases by Jones. On April 3, 1992, Clark gave Jones $700 to buy cocaine base. Ten days later, Jones delivered 12.33 grams of cocaine base to Clark. On April 17, 1992, Clark gave Jones $350 to buy cocaine, and Jones delivered 6.08 grams of cocaine base on May 4th. These transactions resulted in Jones' indictment on two counts of unlawful distribution of cocaine base. *See* 21 U.S.C. § 841(a)(1).

After the indictment, Jones moved to dismiss the case or, in the alternative, suppress the evidence gathered in the investigation. At the suppression hearing, Jones argued that (1) the government had manufactured a connection to postal property by luring Jones to the Raleigh facility, and (2) the government's outrageous conduct in investigating Jones violated the fundamental fairness guarantee of the Fifth Amendment's Due Process Clause. The district court rejected both arguments. The court found that there was a "sufficient nexus on postal property separate and apart from the incident in which the defendant was lured to the postal property." The court also found no unconstitutional conduct on the part of the government.

Jones then pled guilty to both counts, conditioning his plea on the ability to appeal the denial of the suppression motion. Jones also filed a motion for a downward departure from the mandatory minimum sentence for his crimes. The district court denied this motion and sentenced Jones to the statutory minimum of sixty months in prison.

On appeal, Jones advances three contentions. First, Jones challenges the authority of the Postal Service to investigate him since much of the illegal conduct occurred off postal property. Second, Jones argues that the outrageous character of the government's investigation violated Fifth Amendment due process. Finally, Jones contends that the district court should have granted his motion for a downward departure in sentencing. We address each contention in turn.

## II.

The Postal Service has statutory authority "to investigate postal offenses and civil matters relating to the Postal Service." 39 U.S.C. § 404(a)(7); *see also* 18 U.S.C. §§ 3061(a) & (b)(1) (stating that postal inspectors have the authority to serve warrants, issue subpoenas, make certain warrantless arrests, etc., with respect to "postal offenses"). Since the various statutes set forth the authority of postal inspectors in terms of "postal offenses," the question before us concerns the appropriate definition of that term. Neither the statute nor its accompanying regulations supply a definition. *See United States v. Lustig,* 865 F.2d 41, 42 (2d Cir.1989). Indeed, the relevant regulations appear to speak more to the mechanisms of investigation than to the precise parameters of what is being investigated. *See* 39 C.F.R. § 233.1 (1993).

Jones contends that the statutory term "postal offenses" strictly limits the Postal Service's investigatory authority to incidents occurring on postal property or involving use of the mails. Because his conduct involved neither element, Jones argues that the investigation of him could not have been authorized by statute.

■ We think the defendant's view places a restrictive gloss upon the statute. Congress plainly intended the investigative authority conferred upon postal inspectors to extend to conduct that could reasonably be said to impair the proper operation of the Postal Service. This does not mean that postal inspectors have been granted unlimited license to investigate the purely personal affairs of postal employees. Where, however, there exists a sufficient connection between the investigated conduct and postal operations or postal property, the statutory authority has not been exceeded. The fact that a drug distribution offense such as § 841(a)(1) does not speak specifically in terms of postal affairs does not preclude it from constituting a postal offense. If it did, much narcotics activity on the part of postal employees might go uninvestigated, notwithstanding its connection to postal operations. District courts can be entrusted to decide whether such a connection exists in light of

the totality of the relevant circumstances. Such a flexible approach is preferable to the imposition of arbitrary criteria which Congress did not enact.

■ Here the district court was correct in holding that the inspector did not exceed his statutory authority. The interest of the Postal Service in maintaining a drug-free working environment extends beyond merely preventing drug transfers on postal property, and the conversations between Jones and Clark are sufficient to create a postal offense within the meaning of the statute. The entire relationship between Jones and Clark was based on the fact that they were both postal employees. The two met while working, and it was the job that cemented their relationship. Furthermore, the illicit activities were hardly restricted to Jones' off-duty hours. Clark offered uncontested testimony that he and Jones discussed drug transactions while at work.* Given these facts, we have little trouble deciding that a postal employee planning his drug transactions while performing postal duties has engaged in an investigable postal offense.

Our holding follows that of the Second Circuit in *United States v. Lustig*, 865 F.2d 41 (2d Cir.1989). Although Jones contends that *Lustig* held the postal investigation in that case to be authorized only because the defendant had actually consummated a sale on postal property, the court's reasoning is to the contrary. The Second Circuit took care to note that the defendant in *Lustig* "was never observed with controlled substances on postal property during the investigation" and that the "actual exchanges of marijuana did not occur on postal property." *Id.* at 42. The court nonetheless found defendant's actions "a 'postal offense' which the Postal Service can and should investigate." *Id.* at 43. It further noted the district court's statement that "dealing in contraband substances among postal employees would certainly have a deleterious effect upon morale, safety and efficient operation of the Postal Service ... [and] that the Postal Service

investigators had not only a right, but a responsibility, to go forward with this investigation." *Id.* at 42. Nothing in *Lustig* embraced the proposition that the investigatory authority of postal inspectors is limited to the actual sales of controlled substances on postal property.

■ Jones also argues that a June 1989 Memorandum of Understanding Between the Attorney General and the Postal Service did not allow the Service to investigate drug offenses occurring off postal property. An interagency memorandum, however, is generally not a sound basis for suppressing evidence where no statutory or constitutional infraction has occurred. *See United States v. Caceres*, 440 U.S. 741, 754–55 & n. 18, 99 S.Ct. 1465, 1472–73 & n. 18, 59 L.Ed.2d 733 (1979) (rejecting judicial enforcement of agency regulations by means of the exclusionary rule where no constitutional rights of the defendant have been violated). While Jones complains that the Drug Enforcement Administration was never notified of the postal investigation, that is not a matter of a violation of Jones' rights, but rather a question for DEA and the Postal Service to take up. As the district court noted, even if the matter here "was technically within DEA's jurisdiction, the fact that Postal investigated it and got the goods" was not inherently improper.

Finally, we do not think in any event that the appropriate remedy for an unauthorized investigation in this case would be suppression of the evidence obtained or reversal of the conviction. In *United States v. Walden*, 490 F.2d 372, 376–77 (4th Cir.1974), this circuit found that a military investigation of civilian crimes in violation of regulations pursuant to the Posse Comitatus Act, 18 U.S.C. § 1385, did not warrant the "extraordinary remedy" of suppression absent evidence of "widespread or repeated violations" on the part of the investigatory authorities. *Walden*, 490 F.2d at 377; *see also United States v. Wolffs*, 594 F.2d 77, 84–85 (5th Cir.1979)

---

* Because Clark testified that several of these conversations occurred before the taped conversations defendant finds objectionable, we need not consider whether inspector Bowen unfairly lured Jones into discussing drug activities while on postal property on February 18th. The district court found Clark to be credible, and his testimony regarding the pretaped conversations establishes that drug conversations between Clark and Jones took place on postal property.

(holding that, although use of Army personnel in a criminal investigation may have violated the Posse Comitatus Act, suppression of the evidence obtained was unnecessary because no widespread or repeated violation of the Act had occurred). Here, as in *Walden,* the elements necessary to prove the investigated crime are clearly established—there is no question that Jones committed the § 841(a)(1) offenses of unlawfully distributing cocaine base. Moreover, unlike in Walden, we have found no violation of the postal inspector's investigatory authority. Given that *Walden* and *Wolffs* found suppression inappropriate in the face of an investigatory violation, we have no difficulty in rejecting defendant's argument here.

## III.

Jones next argues that the government's investigation of him was so outrageous as to violate the Fifth Amendment's due process protections. He contends that Clark had no basis for targeting him as a potential source of drugs, and that without such a basis, Clark's effort to befriend him with the sole purpose of determining whether or not he had an interest in drug activity was outrageous. Jones also takes issue with the government's practice of paying an informant based in part on the informant's ability to uncover evidence of illegal activity, claiming that this practice creates an unfair incentive to discover criminal misconduct. Further, Jones challenges several of Clark's actions as outrageous: Clark's pressing Jones for repayment of several loans unrelated to any drug activity; Clark's frequent calls to Jones regarding the drug transactions to make sure that Jones could get the drugs for Clark; and the fact that Clark set the amounts for each drug buy and provided the money for them.

At the outset, we note that a generalized claim of outrageous misconduct based on the Due Process Clause of the Fifth Amendment is difficult to make out. Although such fundamental fairness claims were first recognized by implication twenty years ago in *United States v. Russell,* 411 U.S. 423, 431–36, 93 S.Ct. 1637, 1642–45, 36 L.Ed.2d 366 (1973), "the doctrine is moribund; in prac-

tice, courts have rejected its application with almost monotonous regularity," *United States v. Santana,* 6 F.3d 1, 4 (1st Cir.1993); *see also id.* (noting that only one such appellate claim has succeeded since 1975); *United States v. Hunt,* 749 F.2d 1078, 1087 (4th Cir.1984). As a practical matter, only those claims alleging violation of particular constitutional guarantees are likely to succeed.

■ The defendant makes no such particularized showing here. He also fails to show that the Postal Service's conduct was of such a character as to violate general standards of fundamental fairness. The use of a confidential informant to uncover narcotics activity at a postal facility offends no constitutional guarantee. There is a significant national interest in keeping important public institutions free of illicit drug activity. Jones' complaint that the government paid the informant and his general questioning of the government's relationship with its informant, fails to address the point of Jones' own conduct—namely, that he was willing on two occasions within a four week period to procure for distribution hundreds of dollars of crack cocaine. Moreover, Clark had reason to suspect Jones' involvement in illegal drugs. Clark maintains—and the district court found him to be a credible witness—that he never began drug discussions with Jones or with anyone else who did not first approach him. Only when Jones himself, without prompting from Clark, broached the issue of drug transactions, did Clark begin to plan a drug buy with Jones. Moreover, Clark's calls to Jones making sure that Jones was still planning to make the buys do not amount to outrageous conduct because those conversations all occurred well after Jones himself had voiced an interest in making drug purchases. Given that the government need not possess reasonable suspicion of wrongdoing before beginning an investigation, *see United States v. Crump,* 934 F.2d 947, 957 (8th Cir.1991), there can be no objection to its efforts where, as here, a reasonable suspicion of unlawful conduct clearly did exist.

■ What Jones really hopes to establish with these various arguments is a claim of entrapment. However, Jones freely chose to

plead and forego his right to trial, and the evidence of his predisposition to commit the crimes makes impossible a finding of entrapment as a matter of law. *See United States v. Johnson,* 872 F.2d 612, 621 (5th Cir.1989) ("Where there is some evidence to support a finding of predisposition, the issue [of entrapment] is properly presented to the jury."); *United States v. Nelson,* 847 F.2d 285, 287 (6th Cir.1988) ("[I]f there is any showing of predisposition, it is up to the jury to determine whether the government agents actually implanted the criminal design in the mind of the defendant."). We cannot say, of course, how a jury might have ruled on Jones' claim, but we do not believe that the evidence is sufficient to establish any governmental conduct that would warrant dismissal of the indictment.

## IV.

Finally, defendant questions the district court's refusal to grant a downward departure from the mandatory minimum at sentencing. Such refusals to depart are not reviewable on appeal, *United States v. Bayerle,* 898 F.2d 28, 30–31 (4th Cir.1990), and we see no other sentencing error. For these reasons, the judgment of the district court is

**AFFIRMED.**