UNITED STATES of America, Plaintiff

v.

**Tiffany ATWATER, Defendant.**

**No. CRIM.4:04 CR 63.**

United States District Court,
E.D. Virginia,
Newport News Division.

Sept. 15, 2004.

Eric M. Hurt, United States Attorney's Office, Newport News, VA, for Plaintiffs.

Larry Mark Dash, Office of the Federal Public Defender, Norfolk, VA, for Defendants.

## ORDER AND OPINION

DOUMAR, District Judge.

Presently before the Court is Defendant Tiffany Atwater's Motion to Dismiss Counts Five, Six, and Seven of a seven-count indictment charging her with violating United States narcotics laws. The issue for decision is whether police conduct allegedly inducing a defendant to conduct a drug transaction within 1000 feet of a school, which subjects a defendant to more severe penalties than if the transaction takes place elsewhere, 21 U.S.C. § 860(a), constitutes outrageous governmental conduct violating due process. The Court holds that it does not.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Indictment

On May 6, 2004, the Grand Jury returned a seven-count indictment charging Atwater with multiple violations of this country's narcotics laws. Only Counts Five, Six, and Seven relate to the instant matter. Counts Five and Six charge that Atwater distributed cocaine base within 1000 feet of a school and Count Seven charges that she possessed and intended to distribute cocaine base within 1000 feet of a school, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii) and 860(a).

### B. Factual Background

In November 2003, Newport News Police Detectives obtained information leading them to believe that Atwater was engaged in the distribution of cocaine base, more commonly referred to as "crack-co-

caine." Detectives subsequently launched an undercover investigation. On seven separate occasions between December 4, 2003 and January 6, 2004, the Government charges that Atwater possessed, sold, or attempted to sell varying amounts of crack-cocaine to an undercover police officer. The last three of these alleged encounters are the subject of the instant Motion.

According to the Government, an undercover detective contacted Atwater and arranged to meet her on December 18, 2003, in the parking lot of the Target store in Newport News, Virginia, at the corner of Oyster Point and Jefferson Avenue. Upon meeting Atwater at the parking lot, the detective allegedly purchased eleven grams of crack-cocaine from her. Thereafter, the detective allegedly arranged to meet Atwater at the same location on two additional occasions, first on December 22, 2003, when the detective claims to have purchased six grams of crack-cocaine from her, and again two weeks later, on January 6, 2004, when the detective arrested her for possessing and intending to sell one-half of one ounce of crack-cocaine. The Government maintains that Atwater selected the Target parking lot as the meeting place for at least the first two alleged encounters.

In her Motion, Atwater contends that at each of the alleged meetings the detective parked his car and waited for her to locate him in the Target parking lot before engaging in the purported transactions. She also argues that the Government has no evidence supporting the claim that she proposed the Target parking lot as the meeting place for the alleged encounters with the police detective.

## C. Atwater's Motion to Dismiss

In all of the counts under which Atwater is charged, she is accused of violating 21 U.S.C. § 841(a)(1) by distributing, possessing, and intending to distribute crack-cocaine. If convicted, Atwater is subject to a mandatory minimum prison term of five years and a maximum term of forty years along with at least four years of supervised release. *Id.* § 841(b)(1)(B)(iii).[1] In Counts Five, Six, and Seven of the Indictment, the three counts under attack in the present Motion, Atwater is also charged with violating 21 U.S.C. § 860(a), a separate provision mandating stiffer penalties for violating § 841(a)(1) within 1000 feet of "the real property comprising a public or private elementary, vocational, or secondary school or a public or private college, junior college, or university, or a playground, or housing facility owned by a public housing authority. . . ." The Government contends, and Atwater does not concede, that the Target parking lot where each of the alleged encounters took place is within 1000 feet of a school. If convicted under § 860(a), Atwater is subject to a maximum term of imprisonment of 80 years and a minimum supervised release term of eight years. Consequently, whether the alleged undercover encounters relating to Counts Five, Six, and Seven of the Indictment are lawful is of paramount significance.

On August 16, 2004, Atwater presented the instant Motion to the Court, arguing that, on each of the three encounters at issue, the undercover detective acted unlawfully by intentionally transacting the alleged drug deals in a place he knew to be within 1000 feet of a school zone, subjecting her to stiffer penalties if convicted than if the officer had met her somewhere else to transact the deals. Atwater contends that such a tactic constitutes government overreaching so great that it qualifies as outrageous conduct violating due process.

1. If convicted on Count One, Atwater is also subject to punishment under § 841(b)(1)(C).

## II. ANALYSIS

### A. Standard of Review

■ The Supreme Court has indicated that there may be particular instances "in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *United States v. Russell*, 411 U.S. 423, 431–2, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973); *see also Moran v. Burbine*, 475 U.S. 412, 432, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) ("We do not question that on facts more egregious than those presented here police deception might rise to a level of a due process violation."). However, the Supreme Court has never condemned law enforcement conduct as so outrageous that it warranted dismissal of charges against a criminal defendant. To the extent that the outrageous conduct defense does exist, a defendant must allege facts that " 'shock[ ] ... the universal sense of justice,' mandated by the Due Process Clause...." *Russell*, 411 U.S. at 432, 93 S.Ct. 1637 (quoting *Kinsella v. United States ex rel. Singleton*, 361 U.S. 234, 246, 80 S.Ct. 297, 4 L.Ed.2d 268 (1960)).

■ The Fourth Circuit has acknowledged that the defense of outrageous government conduct may be available, *see United States v. Jones*, 13 F.3d 100, 104 (4th Cir.1993); *United States v. Hunt*, 749 F.2d 1078, 1087 (4th Cir.1984), but like the Supreme Court, it is yet to encounter a set of facts constituting a meritorious defense. To the extent that the defense is available, the Fourth Circuit has made clear that "only those claims alleging violation of particular constitutional guarantees are likely to succeed." *Jones*, 13 F.3d at 104; *see also Hampton v. United States*, 425 U.S. 484, 490, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976) (opinion of Rehnquist, J.) ("The limitations of the Due Process Clause of the Fifth Amendment come into play only when the Government activity in question violates some protected right of the Defendant.").

### B. Discussion

■ Atwater's Motion does not identify a particular constitutional guarantee abridged by the design of the Newport News Police Detectives' undercover scheme. This, in and of itself, is detrimental to her claim. Instead, Atwater argues that law enforcement officials possessed no information indicating that she had ever distributed crack-cocaine within 1000 feet of a school prior to the alleged transactions described above, so that conducting the undercover operation within the banned zone constitutes outrageous government conduct. Specifically,

> The undercover agent could have easily selected a location a mere few parking spaces further west or north of the location he chose, and he would have been outside the 1000 foot zone. Since the government appears to have set up the scheme by which the defendant was eventually arrested within 1000 feet of a school, it is outrageous for her to be prosecuted and punished for what was actually an illegal activity orchestrated by the undercover agent.

Def.'s Mot. 1 and Mem. to Dismiss at 5.

Though she never mentions the phrase, Atwater's Motion is couched in the rhetoric of the "sentencing manipulation" theory, which this Circuit cast grave doubt over in *United States v. Jones*, 18 F.3d 1145, 1154–5 (4th Cir.1994).[2] In *Jones*, co-

---

2. The sentencing manipulation theory is separate and distinct from its close cousin, the "sentencing entrapment" theory. *See Jones*, 18 F.3d at 1152–4. To be clear, Atwater does not argue that she was entrapped by the de-

tective into distributing or attempting to distribute crack-cocaine. Rather, she contends that she would not have engaged in the alleged conduct within 1000 feet of a school building but for the undercover detective

defendants convicted of offenses stemming from a crack-cocaine enterprise in which they were involved appealed their sentences, arguing that they were denied due process because undercover law enforcement officers knowingly and intentionally bargained to purchase quantities of crack-cocaine beyond that necessary to obtain a base-level conviction. *Id.* at 1151–2. The Fourth Circuit rejected that argument, holding that even if the law enforcement officers bought additional quantities of crack-cocaine for sentencing purposes, no violation of due process occurred. *Id.* at 1155. "We ... decline to adopt a similar rule that would require district courts to speculate as to the motives of, or to ascribe motives to, law enforcement authorities. Due process requires no such ruminations." *Id.* (citing *United States v. Connell*, 960 F.2d 191, 196 (1st Cir.1992)).

■ Though the present case does not involve a sentencing enhancement, but rather an alleged violation of an independent statute (21 U.S.C. § 860(a)) that results in a more severe sentence for the same conduct, the principle is the same: district courts will not engage in speculation regarding the motives or devices of law enforcement officers engaged in undercover operations to apprehend criminal suspects who otherwise possess a criminal predisposition. *See Connell*, 960 F.2d at 196 ("Courts should go very slowly before staking out rules that will deter government agents from the proper performance of their investigative duties."), *quoted with approval in Jones*, 18 F.3d at 1155; *cf. Russell*, 411 U.S. at 435, 93 S.Ct. 1637 (emphasizing that the contours of the entrapment defense are "not intended to give the federal judiciary a 'chancellor's foot' veto over law enforcement practices of which it [does] not approve"). Consequently, the Court need not resolve the factual question whether Atwater or the undercover officer proposed the Target parking lot as the place of the alleged encounters. Absent other facts not alleged, whether Atwater or the officer selected the location is immaterial to the legal question presented.

It is apparent, and Atwater does not argue otherwise in her Motion, that if the facts as alleged are true she would have participated in the illegal transactions whether they were within 1000 feet of a school or 1000 miles of a school. Indeed, the same might be said for the vast majority of suspected drug dealers apprehended by undercover operations. Requiring that undercover schemes be adapted to Federal Sentencing Guideline provisions or independent statutes, such as § 860(a), which call for stricter punishment simply by virtue of the location of the illegal conduct, would impart an undue burden on law enforcement. Due process does not compel a law enforcement officer to wield a tape measure in one hand and heave this country's sentencing codes in the other; let alone does it require an undercover officer to position his vehicle "a mere few

parking his car and meeting her where he did. The latter constitutes a sentencing manipulation-type argument as opposed to a sentencing entrapment-type argument. Sentencing entrapment requires that a defendant be devoid of criminal predisposition. *Id.* at 1153. Sentencing manipulation, on the other hand, requires government conduct so outrageous that it treads over due process, but it does not necessarily require that a defendant be devoid of criminal predisposition. *Id.* Because Atwater does not raise entrapment as a

defense, the Court need not address it. In any event, the Fourth Circuit is yet to pass judgment over the viability of the sentencing entrapment theory. *Id.* at 1154; *cf. United States v. Glover*, 153 F.3d 749, 756–7 (D.C.Cir. 1998) (rejecting sentencing entrapment defense where defendant alleged that detectives intentionally selected a location within 1000 feet of a school for an undercover drug transaction because defendant willingly participated in the transaction).

parking spaces further west or north of the location he chose" to avoid being in a school zone. In fact, a law enforcement officer may lawfully conduct an undercover operation like the one in this case wherever he chooses, so long as the object of the sting is predisposed to commit the primary offense involved.

## III. CONCLUSION

It is not entirely clear to what extent the outrageous government conduct defense, and the sentencing manipulation theory in particular, are available in this Circuit. But to the degree that they are, Atwater's Motion fails to identify a particular constitutional guarantee abridged by the detective's conduct and, more fundamentally, does not allege any facts that shock the universal sense of justice that due process commands. Instead, she questions the motives and devices of an undercover sting, an inquiry into which the Court will not delve. Consequently, her Motion to Dismiss is **DENIED**.

The Clerk is **DIRECTED** to mail a copy of this Order to all counsel of record.

**IT IS SO ORDERED.**