UNITED STATES of America,
Plaintiff-Appellee,

v.

James Kenneth ROBERTS, aka Harold
Weber, Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Clifton Lee HAWK,
Defendant-Appellant.

Nos. 84–5382, 85–5028.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 3, 1985.

Decided Jan. 3, 1986.

Robert E. May, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Thomas D. Penfield, Eugene G. Iredale, San Diego, Cal., for defendants-appellants.

Before WALLACE, CANBY, and BEEZER, Circuit Judges.

WALLACE, Circuit Judge:

This appeal involves the interception and search of a marijuana-laden sailing vessel at sea by a Coast Guard team assigned to a naval ship. Roberts appeals his conviction after a jury trial. Hawk appeals his conviction after a conditional guilty plea pursuant to Fed.R.Crim.P. 11(a)(2). We have jurisdiction under 28 U.S.C. § 1291, and we affirm both convictions.

I

On May 14, 1984, the U.S.S. *Reid* (the *Reid*), a United States Navy guided-missile frigate, was approximately 130 miles west of the Mexican coastline and 1,800 miles south of San Diego. A team of five Coast Guard personnel was aboard the *Reid* as part of a cooperative Navy/Coast Guard program for enforcement of United States laws on the high seas. After observing the *Sea Waltz*, a 41-foot long sailboat, the Coast Guard personnel on board contacted it by radio and announced their intention to come aboard to determine compliance with United States laws. A Coast Guard boarding team was then dispatched from the *Reid* in a boarding boat with a Navy crew. As the boarding boat approached the *Sea Waltz*, the Coast Guard personnel smelled marijuana. They then boarded the *Sea Waltz* and discovered that it was filled with bales, each approximately 24 by 24 by 16 inches and wrapped in black plastic. After one of the bales was tested and determined to contain marijuana, a bale was seized and taken aboard the *Reid* as evidence. Photographs were taken of the remaining bales. Meanwhile, the three crew members of the *Sea Waltz*—including Roberts and Hawk—were arrested and taken aboard the *Reid*.

The Navy then began towing the *Sea Waltz* to the United States. The towing operation, however, was unsuccessful. The *Sea Waltz* took on water, and, after futile efforts to salvage the vessel, the *Sea Waltz* was shot with gunfire and allowed to sink so that it would not be a hazard to navigation.

Roberts and Hawk were each indicted for conspiracy to possess marijuana on the high seas with intent to distribute and conspiracy to possess marijuana with intent to import it into the United States in violation of 21 U.S.C. § 955c, for possession of marijuana with intent to distribute in violation of section 955a(a), and for possession of marijuana with intent to import into the United States in violation of section 955a(d)(1). Roberts was convicted in a jury trial on all four counts. Hawk entered a conditional guilty plea pursuant to Fed.R. Crim.P. 11(a)(2) to the count of conspiracy to possess with intent to distribute. They raise two arguments on appeal.

II

Roberts and Hawk contend that the Navy's involvement in their arrest violated both the Posse Comitatus Act, 18 U.S.C. § 1385, and the proscriptions against military involvement in civilian law enforcement contained in 10 U.S.C. §§ 371–378. They argue that the district court should

have responded to these alleged violations by dismissing their indictment or suppressing the resulting evidence.

### A.

We first address whether the Navy's involvement in the arrest of Roberts and Hawk violated federal statutory law. This mixed question of law and fact is primarily legal. Accordingly, we determine this question de novo. *See United States v. McConney,* 728 F.2d 1195, 1200–02 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

■ The contention that the Navy's activity in this case violated the Posse Comitatus Act is plainly without merit. The Posse Comitatus Act states:

Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both.

18 U.S.C. § 1385. By its express terms, this act prohibits only the use of the Army and the Air Force in civilian law enforcement. We decline to defy its plain language by extending it to prohibit use of the Navy.

Whether the Navy's involvement violates the proscriptions of 10 U.S.C. §§ 371–378 requires a more complex inquiry. Under section 372, the Secretary of Defense may make Navy equipment available to the Coast Guard for law enforcement purposes. Section 374(a)(1), which refers specifically to the drug laws that Roberts and Hawk have been convicted of violating, authorizes the Secretary of Defense to assign Navy personnel to operate this equipment. Section 374(b), however, generally requires that this equipment be used only "for monitoring and communicating the movement of air and sea traffic." Section 374(c)(1) authorizes a narrow exception to this rule:

In an emergency circumstance, [this] equipment ... may be used outside the land area of the United States ... as a base of operations by Federal law enforcement officials to facilitate the enforcement of a law listed in subsection (a) and to transport such law enforcement officials in connection with such operations, if—

(A) equipment operated by or with the assistance of personnel assigned under subsection (a) is not used to interdict or to interrupt the passage of vessels or aircraft....

10 U.S.C. § 374(c)(1). Here, the equipment operated by the Navy personnel—the *Reid* and the boarding boat—was used to interdict or interrupt the passage of the *Sea Waltz.* Therefore, the Navy activity does not fall within the narrow exception in section 374(c) and instead would appear to violate the terms of section 374(b).

Section 374, however, cannot be read in isolation. It must be considered in the context of the entire chapter, particularly section 378, which is entitled "Nonpreemption of other law," and states: "Nothing in this chapter shall be construed to limit the authority of the executive branch in the use of military personnel or equipment for civilian law enforcement purposes beyond that provided by law before December 1, 1981." Section 378 requires that we determine the legal authority of the executive branch to use the Navy for civilian law enforcement purposes before December 1, 1981. If the exercise of authority here would have been within the legal authority of the executive branch if it had occurred prior to December 1, 1981, section 378 immunizes what would otherwise be a violation of section 374.

The government concedes that prior to December 1, 1981, Naval Instruction 5820.7 (issued May 15, 1974 and still in effect today) adopted for the Navy, as a matter of policy, the restrictions of the Posse Comitatus Act but authorized exceptions to this policy when specific approval of the Secretary of the Navy was granted. It is clear that the Navy's direct assistance to the Coast Guard would violate this general policy. Since, however, the Secretary of the

Navy, prior to December 1, 1981, had the legal authority to approve exceptions to this policy, this legal authority, pursuant to section 378, is not preempted by section 374. The pivotal question becomes whether the Secretary of the Navy in fact approved the Navy activity involved here. If so, there has been no violation of section 374.

■ On July 29, 1982, the Secretary of the Navy, in a memorandum to the Secretary of Defense, specifically approved Navy assistance to the Coast Guard in support of drug interdiction operations. The geographical scope of this approval, however, is unclear. The Secretary of the Navy limited his approval to those activities listed in an enclosure that is not in the record. His reference to the enclosure suggests that its authorization may have been confined to the Atlantic fleet. Moreover, the government represented to the district judge that "it would appear that the approval ... went to a limited area; that is, to the Atlantic fleet." While the government now acknowledges only that "a close reading of these documents reflects confusion as to whether the authorization ... extended to the Pacific Ocean," we assume, arguendo, that the government is bound to its original concession. It follows that the Navy activity here was not authorized by the Secretary of the Navy. Consequently, the nonpreemption provision of section 378 does not apply, and the Navy activity violated section 374.

### B.

We now consider whether this violation of 10 U.S.C. § 374 required the district court either to dismiss indictments of Roberts and Hawk or to suppress the evidence obtained via the violations. We review the district court's refusal to impose sanctions under an "abuse of discretion" standard. *See United States v. Sterling,* 742 F.2d 521, 524 (9th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2322, 85 L.Ed.2d 840 (1985).

Because the Posse Comitatus Act and sections 371–378 of Title 10 embody similar proscriptions against military involvement in civilian law enforcement, we consider it significant that courts have uniformly refused to apply the exclusionary rule to evidence seized in violation of the Posse Comitatus Act. *See, e.g., United States v. Wolffs,* 594 F.2d 77, 85 (5th Cir.1979) (*Wolffs*); *United States v. Walden,* 490 F.2d 372, 376–77 (4th Cir.), *cert. denied,* 416 U.S. 983, 94 S.Ct. 2385, 40 L.Ed.2d 760 (1974) (*Walden*). In *Wolffs,* for example, the Fifth Circuit held that the extraordinary remedy of exclusion was inappropriate until such time as "widespread and repeated violations" of the Posse Comitatus Act demonstrated the need for such a remedy. *Wolffs,* 594 F.2d at 85; *accord Walden,* 490 F.2d at 377.

■ We adopt the approach of *Wolffs* and *Walden* and hold that an exclusionary rule should not be applied to violations of 10 U.S.C. §§ 371–378 until a need to deter future violations is demonstrated. *Cf. United States v. Leon,* —— U.S. ——, 104 S.Ct. 3405, 3412–13, 82 L.Ed.2d 677 (1984) ("whether exclusionary sanction is appropriately imposed in a particular case .... must be resolved by weighing the costs and benefits"). We find no such need here. The record does not reflect that the Navy has engaged in widespread and repeated violations of 10 U.S.C. §§ 371–378. Moreover, the district court found, and Roberts and Hawk do not dispute, that the Navy's violation was unintentional and in good faith. In these circumstances, the clear costs of applying an exclusionary rule are not countervailed by any discernible benefits. We therefore conclude that the district court did not abuse its discretion in refusing to exclude the evidence or dismiss the indictment.

### III

Roberts and Hawk argue that the district court should have responded to the Navy's destruction of the bales on board the *Sea Waltz* by suppressing the use of secondary evidence of marijuana aboard the vessel. We review the district court's refusal to suppress the evidence under an "abuse of

discretion" standard. *See United States v. Ordonez,* 737 F.2d 793, 811 (9th Cir.1984); *United States v. Kearney,* 560 F.2d 1358, 1369 (9th Cir.), *cert. denied,* 434 U.S. 971, 98 S.Ct. 522, 54 L.Ed.2d 460 (1977).

■ Whether a court should impose sanctions when the government has destroyed criminal evidence depends on a balancing of "the quality of the Government's conduct and the degree of prejudice to the accused. The Government bears the burden of justifying its conduct and the defendant bears the burden of demonstrating prejudice." *United States v. Loud Hawk,* 628 F.2d 1139, 1152 (9th Cir.1979) (en banc), *cert. denied,* 445 U.S. 917, 100 S.Ct. 1279, 63 L.Ed.2d 602 (1980) (*Loud Hawk*).

■ We cannot agree that the district court abused its discretion in refusing to impose sanctions. The record demonstrates that the Navy's sinking of the *Sea Waltz* was not done in bad faith. Even if we assume that the Navy negligently towed the vessel, when the vessel took on too much water a reasonable decision was made that the proper course was to sink it. Nor have Roberts and Hawk demonstrated any prejudice from the loss of the bales. One sample bale was preserved intact, and testing of another indicated that it was marijuana. In addition, the government provided reliable secondary evidence of the nature of the bales. Finally, Roberts and Hawk were not charged under provisions authorizing enhanced sentences based on the quantity of marijuana. *See, e.g.,* 21 U.S.C. § 841(b)(6) (repealed 1984).

In light of *Loud Hawk,* we therefore conclude that the district judge did not abuse his discretion in refusing to impose sanctions for the destruction of evidence.

AFFIRMED.