# Use of Navy Drug-Detecting Dogs by Civilian Postal Inspectors

The Secretary of the Navy retains the discretion under the Posse Comitatus Act and Department of Defense regulations to authorize the United States Postal Inspection Service to use Navy drug-detecting dogs and their handlers to identify postal packages containing illegal narcotics

October 10, 1989

MEMORANDUM OPINION FOR THE ASSISTANT ATTORNEY GENERAL
CRIMINAL DIVISION

On March 25, 1988, your office requested our advice on whether the Navy may authorize the U.S. Postal Inspection Service to use Navy drug-detecting dogs, guided by Navy handlers, to identify postal packages containing illegal narcotics. Upon review of the provision of the Posse Comitatus Act contained in 18 U.S.C. § 1385, as well as related provisions in title 10, we conclude that the Secretary of the Navy has the discretion to authorize such a use of Navy dogs and their handlers.[1]

## I. The Posse Comitatus Act

Congress enacted the Posse Comitatus Act ("Act") in 1878 to address Southern objections to the use of federal troops in civilian law enforcement during the Reconstruction era. In its current form, the central provision of the Act provides that:

> Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress,

---

[1] This conclusion is consistent with an earlier memorandum prepared by this Office *See Use of Department of Defense Drug-Detecting Dogs to Aid in Civilian Law Enforcement,* 13 Op. O.L.C 185 (1989) ("OLC Memorandum"). Several officials have sided with the contrary view of James F Goodrich, then-Under Secretary of the Navy, that "the requested support is in conflict with the provisions of the Posse Comitatus Act. The use of military dog handlers is considered to constitute direct involvement in law enforcement activities and is thus illegal." Memorandum for Commander in Chief of the U.S. Pacific Fleet, from James F. Goodrich, Under Secretary of the Navy, *Re Request for Loan of Military Dogs* (June 6, 1987). *See* Memorandum for Deputy Assistant Secretary of Defense for Drug Policy and Enforcement, from Robert L. Gilliat, Assistant General Counsel, Department of Defense, *Re· Use of Navy Drug Dog Detection Teams to Inspect U S Mails* (Jan. 20, 1988); Letter for Captain Howard Gehring, Director, National Narcotics Border Interdiction System, Office of the Vice President, from Stephen G Olmstead, Deputy Assistant Secretary, Drug Policy and Enforcement (Jan. 21, 1988)

> willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both.

18 U.S.C. § 1385. By its terms, section 1385 does not apply to the Navy; the words of the statute cover only the Army and the Air Force. Moreover, courts considering the issue have held that the Act does not apply to the Navy except by executive extension. *United States v. Roberts*, 779 F.2d 565, 567 (9th Cir.), *cert. denied*, 479 U.S. 839 (1986); *United States v. Del Prado-Montero*, 740 F.2d 113, 116 (1st Cir.), *cert. denied*, 469 U.S. 1021 (1984). *See* Memorandum for State Department Legal Advisor, from Michael A. Carvin, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Assignment of Marine Personnel to the U.S. Mission to the United Nations* at 8 (May 10, 1988). *See also United States v. Walden*, 490 F.2d 372, 374-76 (4th Cir.), *cert. denied*, 416 U.S. 983 (1974) (suggesting that omission of Navy was a drafting oversight but conceding that Navy actions would not violate the letter of the Act).

As a matter of policy, the Department of Defense has extended the Posse Comitatus Act to the Navy through regulations. 32 C.F.R. § 213.10(c) (1988). Those regulations make clear, however, that the Secretary of the Navy retains the discretion to except situations from the Act's coverage "on a case-by-case basis."[2] *Id.* Thus, we conclude that under the Posse Comitatus Act, the Secretary, within his discretion, may authorize the use of Navy drug dogs and their handlers contemplated by the Postal Inspector.

## II. 10 U.S.C. Chapter 18

In 1981, Congress revisited the question of military involvement in civilian law enforcement. Although Congress did not alter section 1385, it did add chapter 18 to title 10 of the U.S. Code to provide for certain types of military cooperation with civilian law enforcement officials. In particular, chapter 18 provides that the Secretary of Defense "may ... make available any equipment ... of the Department of Defense to any Federal, State, or local civilian law enforcement official for law enforcement purposes." 10 U.S.C. § 372. No one has questioned (and we have no reason to doubt) that drug-detecting dogs are to be considered "equipment" for purposes of this provision. Thus understood, section 372 provides express authorization for that which section 1385 does not bar: the loaning of Navy dogs to civilian law enforcement authorities.

---

[2] Exceptions that are likely to involve participation by Navy personnel in the "interdiction of a vessel or aircraft, a search or seizure, an arrest, or other activity that is likely to subject civilians to the exercise of military power that is regulatory, proscriptive, or compulsory in nature" require the advance approval of the Secretary of Defense, as well. 32 C F R. § 213 10(c)(2)

In section 375, however, Congress provided that the provision of equipment to civilian law enforcement personnel under section 372 does not permit "*direct participation* by a member of the Army, Navy, Air Force, or Marine Corps in a search and seizure, an arrest, or other similar activity unless participation in such activity by such member is otherwise authorized by law." 10 U.S.C. § 375 (emphasis added). Thus, some question remains whether section 375 would permit the Navy also to provide the Postal Inspector with the Navy dogs' handlers, without whom the dogs would be useless.[3]

For two reasons, we conclude that section 375 does not bar the Postal Inspector's use of the Navy dogs and their handlers. First, in the 1981 enactment, Congress made clear that nothing in the new provisions was to be "construed to limit the authority of the executive branch in the use of military personnel or equipment for civilian law enforcement purposes beyond that provided by law before December 1, 1981." 10 U.S.C. § 378. Thus, Congress did not intend in 1981 to bar any military involvement in civilian law enforcement that had been permissible under section 1385 and the Department of Defense regulations enacted thereunder. The Conference Report confirms this conclusion. It states that:

> Section 378 clarifies the intent of the conferees that the restrictions on the assistance authorized by the new chapter [18] in title 10 apply only to the authority granted under that chapter. Nothing in this chapter should be construed to expand or amend the Posse Comitatus Act. In particular, because that statute, on its face, includes the Army and Air Force, and not the Navy and Marine Corps, the conferees wanted to ensure that the conference report would not be interpreted to limit the authority of the Secretary of Defense to provide Navy and Marine Corps assistance under, for example, 21 U.S.C. 873(b). However, nothing in this chapter was in any way intended to rescind or direct the recision of any current regulations applying the policies and terms of the Posse Comitatus Act to the activities of the Navy or Marine Corps.

H.R. Conf. Rep. No. 311, 97th Cong., lst Sess. 122 (1981).[4]

Second, section 375 prohibits only the "direct participation" of military forces in civilian law enforcement. Here, by contrast, Navy dogs and per-

---

[3] Although 10 U S.C. § 373(1) would permit Navy personnel to train civilian Postal Inspectors to handle the dogs, we understand that substitution of different human handlers is not practicable

[4] The provision cited as an example by the Conference Report specifies that, upon a request by the Attorney General, "it shall be the duty of any agency or instrumentality of the Federal Government to furnish assistance ... to him for carrying out his functions [concerning the control of drug trafficking]." 21 U.S C. § 873(b).

314

sonnel would merely identify packages containing drugs. As we understand the proposal, the actual "search and seizure" of the package would be performed by civilian Postal Inspectors.[5] The legislative history of section 375 shows that Congress intended that provision to bar only the exercise of military authority in direct confrontations with civilians.[6] During the hearings on chapter 18, for example, Representative Hughes, the Chairman of the Subcommittee on Crime, observed that:

> I can understand where you might have to have military personnel, actually operate [in a law enforcement capacity] under given circumstances. I understand that. But that is a long way from giving them the authority to make an arrest or to make a seizure.
>
> An assist, as opposed to a military person making an arrest or participating in a seizure is an important distinction.

*Posse Comitatus Act: Hearing on H.R. 3519 Before the Subcomm. on Crime of the House Comm. on the Judiciary*, 97th Cong., 1st Sess. 28 (1981). During the same exchange, William H. Taft IV, then-General Counsel of the Department of Defense, concurred with Representative Hughes's distinction by stating that:

> I think that you have correctly identified the significance of the arrest and the seizure actions.... I think that it is the arrests and the seizures, and active — putting, really, into a confrontation, an immediate confrontation, the military and a violator of a civilian statute, that causes us the greatest concern.

*Id.* at 30.

These observations were by no means novel. The Appendix of materials before the Subcommittee contains an opinion by this Office noting that the Posse Comitatus Act does not prohibit military assistance to civilian law enforcement where "there is no contact with civilian targets of law enforcement, no actual or potential use of military force, and no military control over the actions of civilian officials." *Id.* at 540, reprinting Letter for Deanne Siemer, General Counsel, Department of Defense, from Mary C. Lawton, Deputy Assistant Attorney General, Office of Legal

---

[5] The precise relationship between constitutional doctrines of "search and seizure" and the meaning of the same terms in section 375 remains unclear. The Supreme Court has held, however, that the use of drug-detecting dogs to identify luggage containing drugs does not constitute a "search" for purposes of the Fourth Amendment. *United States v. Place*, 462 U.S. 696, 707 (1983).

[6] This position is consistent with our earlier guidance concerning section 375. *See* OLC Memorandum, 13 Op. O.L.C. at 186.

Counsel at 13 (Mar. 24, 1978).[7] Accordingly, where, as here, the Navy dogs and personnel will not be used in direct confrontations with civilians, section 375 would not bar their use in civilian law enforcement efforts.

## III. Conclusion

We conclude that the Secretary of the Navy retains the discretion under the Posse Comitatus Act and Department of Defense regulations to authorize the use by the Postal Inspector of Navy drug-detecting dogs and their handlers to identify packages containing illegal narcotics. The provision in 10 U.S.C. § 375 restricting the direct participation of military personnel in civilian law enforcement efforts does not prevent the Secretary from authorizing the proposed use because (i) that provision does not limit the Secretary's authority under Department of Defense regulations to make exceptions to the application of the Posse Comitatus Act and (ii) the proposed use of the dogs and their handlers will not involve confrontation with civilians.

WILLIAM P. BARR
*Assistant Attorney General*
*Office of Legal Counsel*

---

[7] Subsequent congressional action with respect to section 375 confirms this understanding of the 1981 legislative history In 1988, Congress amended section 375 by deleting from the list of prohibited activities "interdiction of a vessel or aircraft " *See* 10 U.S C. § 375 note The Conference Report on the 1988 amendments states that Congress took such action "because the term 'interdiction' has acquired a meaning that includes detection and monitoring as well as a physical interference with the movement of a vessel or aircraft." H.R. Conf. Rep No. 989, 100th Cong., 2d Sess. 452 (1988). Congress thus clarified that such preliminary law enforcement tasks as "detection" do not come within section 375, whereas actual "physical interference" with a civilian remains barred by that provision's reference to "seizure[s]." *Id*