28 F.3d 107
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Frank MARRONE, Petitioner-Appellant,
v.
Lloyd F. HAMES, Commissioner of Corrections, State of
Alaska, Respondent-Appellee.
 No. 93-35744.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 7, 1994.*
Decided June 17, 1994.
 
 1
 Before: WRIGHT, WIGGINS and THOMPSON, Circuit Judges
 
 
 2
 MEMORANDUM**
 
 
 3
 Frank Marrone is a state prisoner who petitions for writ of habeas corpus pursuant to 28 U.S.C. Sec. 2254. He was convicted of various state drug offenses. The charges against Marrone resulted from a joint investigation by the Anchorage Police Department (APD) and the United States Army Criminal Investigation Division (CID) at Fort Richardson, Alaska. Marrone challenges his conviction on the ground that the military's involvement in the investigation of civilian drug dealers violated the Posse Comitatus Act, 18 U.S.C. Sec. 1385.[1] We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We affirm.
 
 FACTS AND PRIOR PROCEEDINGS
 
 4
 In the spring of 1988, APD and CID each began independently investigating a video arcade owned and operated by Marrone in Anchorage. Each suspected that drugs were being sold at the arcade. APD was concerned that drugs were being sold to juveniles; CID was concerned that drugs were being sold to military personnel.
 
 
 5
 In June 1988, CID Investigator Houser and Military Police Investigator Murphy met with APD Investigator Feichtinger to plan a joint investigation of the arcade. The plan called for Murphy and an APD informant to make controlled drug purchases from persons in the arcade. Murphy's participation was to be limited to (1) arranging and making purchases from Marrone and "Pockets," the suspects identified as having sold marijuana to soldiers; (2) identifying any military personnel buying or selling drugs in the arcade; and (3) assisting APD by witnessing the purchases made by APD's informant. Murphy's supervisor then requested and received authorization from CID Division Command for the Sixth Region in San Francisco to undertake a joint criminal investigation of the arcade with APD. Between June 20 and July 7, 1988, Murphy participated in twenty controlled drug purchases from Marrone and six other co-defendants.
 
 
 6
 Marrone was arrested during a police raid of the arcade and charged with various state drug offenses. Prior to trial, Marrone moved to suppress the evidence to be used against him on the ground that Murphy's involvement in the civilian investigation violated the Posse Comitatus Act. Marrone argued that the local military authorities did not have a sufficient independent military interest in the drug trafficking activities at the arcade to warrant Murphy's participation in the investigation.
 
 
 7
 An evidentiary hearing was held in state court on October 26-27 and 31, 1988. After the hearing, the trial judge found that (1) the military had a legitimate independent interest in pursuing the investigation of the reported drug trafficking involving military personnel at the arcade; (2) both the military and APD had initiated independent investigations of the arcade before the joint operation was discussed; (3) the joint operation was initiated by the military; and (4) the local military authorities sought and obtained authorization from CID Division Command prior to undertaking the joint operation. Accordingly, the trial court held that the Posse Comitatus Act was not violated and denied Marrone's motion to suppress. Marrone was then convicted by a jury and sentenced to twelve years in prison.
 
 
 8
 On appeal to the Alaska Court of Appeals, Marrone again argued that the military's involvement in the civilian investigation violated the Posse Comitatus Act. The Alaska Court of Appeals rejected Marrone's claim and affirmed his conviction. Marrone then filed a petition for review with the Alaska Supreme Court, which was denied.
 
 
 9
 On March 27, 1992, Marrone filed a federal habeas corpus petition, again alleging that the Posse Comitatus Act was violated. On June 1, 1993, a magistrate judge recommended that the petition be denied because the military had a sufficient, independent military interest to justify its involvement in the investigation.
 
 
 10
 On July 29, 1993, the district court entered its order adopting the magistrate's recommendations and dismissed the petition on its merits. The district court held, "What happened here is that civilian and military authorities, each with an independent and legitimate interest in the illegal activities occurring at [the arcade], decided to combine efforts." The district court found that "Murphy functioned under civilian auspices in a fashion that did not lend the power of the army to the activities of the police." The district court reasoned that therefore "it would be silly for a court to hold there is a threat to democracy of such significance that ... the court should strive to invoke the Act to suppress evidence of criminal activity." The district court entered final judgment on August 3, 1993.
 
 
 11
 Marrone then filed a timely notice of appeal and a certificate of probable cause was issued.
 
 DISCUSSION
 A. STANDARD OF REVIEW
 
 12
 We review de novo the district court's denial of a petition for writ of habeas corpus. Mikes v. Borg, 947 F.2d 353, 356 (9th Cir.1991), cert. denied, 112 S.Ct. 3055 (1992). In reviewing the district court's decision, this court must accord state courts' factual findings a "high measure of deference," Sumner v. Mata, 455 U.S. 591, 598 (1982), unless it concludes that the findings lacked fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Petitioner bears the burden of proving by convincing evidence that the state court's findings are erroneous. Sumner v. Mata, 449 U.S. 539, 551 (1981).
 
 B. MERITS
 
 13
 The Posse Comitatus Act was passed shortly after the Civil War "to eliminate the direct active use of Federal troops by civil law authorities." United States v. Banks, 539 F.2d 14, 16 (9th Cir.), cert. denied, 429 U.S. 1024 (1976). The Act reflects a fundamental national policy to limit the role of the military in civilian life. Facing an explosion in drug smuggling into the United States, however, Congress liberalized the Act's restrictions in 1981. See 10 U.S.C. Secs. 371-78. Congress intended to maximize the degree of cooperation between the military and civilian law enforcement to stem the influx of illegal drugs into the country, while still maintaining the traditional balance of authority between civilians and the military. See 1981 U.S.Code Cong. & Ad.News 1785. Congress has revised Title 10 several times since 1981, each time further broadening the permissible activities of the military. See 10 U.S.C. Secs. 371-380.
 
 
 14
 The Department of Defense adopted regulations to implement the amended Act. See 32 C.F.R. Sec. 213. Specifically, the military may provide direct assistance to civilian law enforcement authorities if the actions "are taken for the primary purpose of furthering a military or foreign affairs function of the United States, regardless of incidental benefits to civilian authorities." Id. Sec. 213.10(a)(2)(i). The military may not provide direct assistance to civilian law enforcement authorities "for surveillance or pursuit of individuals, or as informants, undercover agents, investigators, or interrogators." Id. Sec. 213.10(a)(3)(iv).
 
 
 15
 Marrone argues that the trial court ignored Congress's intent to restrain the use of the military in direct civilian law enforcement efforts. Specifically, Marrone asserts, the investigation was not conducted "for the primary purpose of furthering military" affairs. See id. Sec. 213.10(a)(2)(i). As evidence that the military was only tangentially involved, Marrone points to the fact that APD took the lead role in conducting the investigation. For example, the military did not manage the informants, conduct any of the briefings and debriefings of the participants, or participate in the application for a warrant to use electronic surveillance. In addition, Marrone notes that the investigation was defined by its targets and not by its victims. Because these individuals were civilians whose conduct occurred wholly in the state's jurisdiction, Marrone argues, it was within the state's power, and not the military's, to prevent and punish their activities.
 
 
 16
 Respondent counters that the trial court's finding that the military had a valid independent military purpose for investigating the reported drug trafficking involving military personnel at the arcade is amply supported by the record. For example, the military already knew, before discussing the possibility of a joint investigation with APD, that military personnel were purchasing marijuana at the arcade. Furthermore, the military had initiated an independent investigation of the arcade before the joint operation was discussed. In fact, the military had already identified two suspects, Marrone and "Pockets." Moreover, the local military authorities did seek and obtain authorization from CID Division Command prior to undertaking the joint operation.
 
 
 17
 We must decide whether the state court's factual finding that the military had a valid independent military purpose lacked fair support in the record. Marshall, 459 U.S. at 432. Because there is ample evidence in the record to support the state court's finding, we affirm the district court's denial of the petition for writ of habeas corpus. Marrone did not establish by convincing evidence that the factual determination by the state court was erroneous. 28 U.S.C. Sec. 2254(d).
 
 
 18
 We also note that even if Marrone had demonstrated that the Act had been violated, he was not entitled to a suppression of the evidence because he did not demonstrate "a need to deter future violations." See United States v. Roberts, 779 F.2d 565, 568 (9th Cir.) (adopting the approach of Wolffs and holding that suppression of evidence obtained in violation of 10 U.S.C. Secs. 371-378 is not an appropriate remedy "until a need to deter future violations is demonstrated"), cert. denied, 479 U.S. 839 (1986); United States v. Wolffs, 594 F.2d 77, 85 (5th Cir.1979) (holding that, although the use of Army personnel in a criminal investigation may have violated the Posse Comitatus Act, suppression of the evidence obtained was unnecessary because no "widespread and repeated violations" of the Act had occurred).
 
 CONCLUSION
 
 19
 For the foregoing reasons, we affirm. Ample evidence supports the state court's determination that the Posse Comitatus Act was not violated in this case. The military had a valid independent purpose for investigating the reported drug trafficking involving military personnel at the arcade. Accordingly, the district court properly denied Marrone's petition for writ of habeas corpus.
 
 
 20
 AFFIRMED.
 
 
 
 *The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34-4.
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Section 1385 of 18 U.S.C. provides, "Whoever, except in cases and under circumstances expressly authorized by the Constitution or Act of Congress, willfully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both."