KLEINFELD, Senior Circuit Judge,
concurring:
I join fully in the majority opinion. I write separately to address applicability of the exclusionary rule to this case. We all agree that the Navy conduct in this case violated the Posse Comitatus policy provisions, though not the criminal Posse Comi-tatus statute.
Were we suggesting something like application of the exclusionary rule to all Posse Comitatus violations, then application of the exclusionary rule would be inappropriate. And if there were any reason to think that the violation in this case were a fluke, it would be inappropriate. This case, though, amounts to the military acting as a national police force to investigate civilian law violations by civilians.
Generally, the exclusionary rule does not apply to Posse Comitatus violations, in the absence of “widespread and repeated violations” demonstrating a need to deter future violations.[1] In this case, unfortunately, that is just what we have. The Navy did not just peek into Dreyer’s home computer. It peeked into every computer in the State of Washington using the peer-to-peer file sharing program, “Gnutella.” That is more “widespread” than any military investigation of civilians in any case that has been brought to our attention. Millions of people use Gnutella, and millions of people live in Washington, so the number of Gnutella users in Washington is likely quite large. As for being “repeated,” the Posse Comitatus violation was repeated against every Gnutella user in *838 Washington. It does not matter that this is the first case we have seen, and that we do not have repeated circuit court cases. The offense is to the people in Washington whose computers were hacked by the Navy, not to this court. The repetition that matters is the repeated invasions of Washingtonians’ privacy, as the Navy software went from civilian computer to civilian computer.
We have not found another case in this circuit or our sister circuits applying the exclusionary rule to Posse Comitatus violations, but neither have we found another case in which the violations were so massive. The cases deeming the exclusionary rule inapplicable are all quite different factually, as in Roberts, where a guided-missile frigate with Coast Guard and Navy personnel aboard caught a drug runner on the high seas. That was one sailboat, not all the computers in the State of Washington using Gnutella. Military surveillance of all the civilian computers in a state is unique, and distinguishable from all the cases we have found that stop short of applying the exclusionary rule.[2]
The military not infrequently investigates civilians or assists in civilian law enforcement incidentally to military law enforcement. A Navy shore patrol may break up a fight involving sailors at a waterfront saloon, and turn the civilians over to the local police. The Army may investigate a drug ring on base, and turn civilian spouses living on base and off-base civilian participants over to civilian authorities. There would be little reason to deter military law enforcement in cases like those, and indeed they would ordinarily not even be Posse Comitatus violations.[3] This case is different. There could be no bona fide military purpose to this indiscriminate peeking into civilian computers. It should be easy to distinguish this case from run of the mill military law enforcement that incidentally brings about apprehension of civilians.
True, the practical effect of the decision may be to let a criminal go. As Justice Cardozo wrote, application of the exclusionary rule means that “[t]he criminal is to go free because the constable has blundered.”[4] We are unlikely to see so widespread and repeated a Posse Comitatus violation from the Army or Air Force, because their military personnel would risk prison.[5] If the military chooses to become a national police force to detect civilians committing civilian crimes, the Navy would be the branch to use, because the criminal penalty does not apply to Navy personnel. Without the criminal penalty, the exclusionary rule is about all that the judiciary has to deter such widespread and repeated Posse Comitatus violations as we have here. Letting a criminal go free to deter national military investigation of civilians is worth it.

. United States v. Roberts, 779 F.2d 565, 568 (9th Cir.1986). The same principle applies to violations of the PCA-like regulations that are at issue here.

. Cf. Roberts, 779 F.2d at 568; United States v. Walden, 490 F.2d 372 (4th Cir.1974).

. Cf. United States v. Hitchcock, 286 F.3d 1064 (9th Cir.2002); United States v. Chon, 210 F.3d 990, 994 (9th Cir.2000); DoD Directive 5525.5, Enclosure 4, E4.1.2.1.

. People v. DePore, 242 N.Y. 13, 21, 150 N.E. 585 (1926).

. See 18 U.S.C. § 1385.