O’SCANNLAIN, Circuit Judge,
concurring in part and dissenting in part:
Before today, “not a single federal court” had applied the exclusionary rule to violations of the Posse Comitatus Act (PCA), 18 U.S.C. § 1385, and its implementing regulations.[1] United States v. *839 Vick, 842 F.Supp.2d 891, 894 (E.D.Va. 2012). That is no accident. As we have observed, the exclusionary rule is an “extraordinary remedy,” United States v. Roberts, 779 F.2d 565, 568 (9th Cir.1986), and the Supreme Court has counseled that it is only to be used as a “last resort,” Hudson v. Michigan, 547 U.S. 586, 591, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006). Yet, in a breathtaking assertion of judicial power, today’s majority invokes this disfavored remedy for the benefit of a convicted child pornographer. It does so without any demonstrated need to deter future violations of the PCA and without any consideration of the “substantial social costs” associated with the exclusionary rule. United States v. Leon, 468 U.S. 897, 907, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Like my colleagues, I conclude that Agent Logan violated the PCA, and I concur in Parts I and II of the majority opinion. But I respectfully dissent from the majority’s misbegotten remedy for that violation.
I
The exclusionary rule is “a judicially created remedy of [the Supreme Court’s] own making” whose “sole purpose” is “to deter misconduct by law enforcement.” Davis v. United States, — U.S. -, 131 S.Ct. 2419, 2427, 2432, 180 L.Ed.2d 285 (2011) (internal quotation marks omitted). That is a worthy objective, but it “exacts a heavy toll on both the judicial system and society at large.” Id. at 2427. Exclusion “undeniably detracts from the truthfinding process and allows many who would otherwise be incarcerated to escape the consequences of their actions.” Pa. Bd. of Prob. & Parole v. Scott, 524 U.S. 357, 364, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998). The rule’s “bottom-line effect, in many cases, is to suppress the truth and set the criminal loose in the community without punishment.” Davis, 131 S.Ct. at 2427; see also Hudson, 547 U.S. at 591, 126 S.Ct. 2159 (stating that the costs of exclusion “sometimes include setting the guilty free and the dangerous at large”).
For these reasons, the Supreme Court has, since the 1970s, “imposed a more rigorous weighing of [the exclusionary rule’s] costs and deterrence benefits.” Davis, 131 S.Ct. at 2427. Gone are the days when courts imposed the exclusionary rule in a manner that was “not nearly so discriminating.” Id. Under current doctrine, the important and significant costs of the rule “present[ ] a high obstacle for those urging [its] application.” Scott, 524 U.S. at 364-65, 118 S.Ct. 2014.
In short, exclusion is “our last resort, not our first impulse.” Hudson, 547 U.S. at 591, 126 S.Ct. 2159.
II
Our precedents reflect this skeptical view of exclusion with regard to violations of the PCA.[2] In United States v. Roberts, we held that the exclusionary rule should not be applied to evidence obtained as a result of a PCA violation “until a need to deter future violations is demonstrated.” 779 F.2d at 568. Such a demonstration requires a showing of “widespread and repeated violations” of the PCA. Id.
In announcing this rule, we adopted the approach of the Fourth and Fifth Circuits in United States v. Walden, 490 F.2d 372, 376-77 (4th Cir.1974), and United States v. Wolffs, 594 F.2d 77, 84-85 (5th Cir.1979). Significantly, none of those three cases applied the exclusionary rule to violations of the PCA, and all three referred to the *840 exclusionary rule as an “extraordinary remedy.” Roberts, 779 F.2d at 568; Wolffs, 594 F.2d at 85; Walden, 490 F.2d at 377. Indeed, in Roberts, we “considered] it significant that courts have uniformly refused to apply the exclusionary rule to evidence seized in violation of the Posse Comitatus Act.” 779 F.2d at 568.
Before today, that description remained true of federal courts.
Ill
As the foregoing survey of Supreme Court and Ninth Circuit precedent makes clear, the application of the exclusionary rule to violations of the PCA is not automatic. Rather, it is assessed by considering whether “the clear costs of applying an exclusionary rule” are outweighed by “any discernible benefits.” Id. This case demonstrates that the costs of exclusion substantially outweigh the evanescent benefits. Indeed, it is not a close call.
A
Any evaluation of whether to apply the exclusionary rule to PCA violations must take into account the significant costs of exclusion. In Walden, the Fourth Circuit believed that the facts of the case before it were particularly useful in highlighting the costs of exclusion. The Fourth Circuit thought it significant that “the evidence of [the] defendant’s guilt [wa]s overwhelming” and that application of the exclusionary rule would have suppressed “the bulk of the evidence” against the defendant. 490 F.2d at 376. The possibility of setting free a convicted felon was a troubling cost of exclusion, and because there was no need to deter future violations, nothing justified incurring such costs. Id. at 376-77; see also United States v. Jones, 13 F.3d 100, 104 (4th Cir.1993) (recognizing that setting free guilty defendants is a cost courts should consider in determining whether to apply the exclusionary rule to PCA violations).
In Dreyer’s case, a jury convicted him of possession and distribution of child pornography. As in Walden, the evidence of guilt is overwhelming. Using specialized software called RoundUp, Agent Logan searched the state of Washington for computers trafficking in child pornography on the Gnutella file-sharing network. Maj. op. at 827. The software identified a computer bearing the Internet Protocol (IP) address 67.160.77.21 as offering several files of known child pornography to fellow Gnutella users. Id. at 827-28. We know that the files contained child pornography because they bear unique identifiers— called “SHA-1 hash values”—that match the identifiers of known child pornography files contained in a database maintained by RoundUp and the National Center for Missing and Exploited Children. Id. at 828 The IP address offering child pornography belonged to Dreyer. Id. Agent Logan, using a method that permitted him to ensure that he was downloading files only from Dreyer’s computer, downloaded two images and a video, which, upon review, he confirmed contained child pornography. Id. Subsequent searches of Dreyer’s seized hard drives revealed several such files. Id. at 828-29. There can be little doubt, then, that Dreyer trafficked in child pornography, an activity that is “intrinsically related to the sexual abuse of children.” New York v. Ferber, 458 U.S. 747, 759, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982).
Application of the exclusionary rule would suppress all evidence obtained by Agent Logan. Moreover, as the majority opinion observes, without the evidence obtained by Agent Logan, it is probable that “there would have been no [subsequent] search[es] and no prosecution.” Maj. op. at 833. Thus, application of the exclusion *841 ary rule to the allegedly tainted evidence and its fruits is likely to result in a convicted child pornographer being released from prison.
It is impossible to state this conclusion without feeling its gravity. In this context, the Supreme Court’s warning against unnecessarily “setting the guilty free and the dangerous at large” should give any jurist pause. Hudson, 547 U.S. at 591, 126 S.Ct. 2159. Yet, such a result would not be uncommon if we were to begin applying the exclusionary rule to PCA cases. Thus, the costs of exclusion are high.
B
Despite this cost, application of the exclusionary rule might still be justified if there were evidence of “widespread and repeated violations” of the PCA.[3] Roberts, 779 F.2d at 568. On this record, there is not.
The majority opinion primarily focuses on Agent Logan’s ostensible violations of the relevant regulations applying the PCA to the Navy. Maj. op. at 835-36. But the actions of one agent—no matter how egregious—do not show that violations are widespread. Agent Logan’s descriptions of his own practices are, therefore, of limited relevance.
Perhaps recognizing the thinness of this evidence, the majority opinion also points out that Agent Logan “began carrying out these searches with two other agents at least several months before he found Dreyer’s IP address.” Id. at 836. It also references another supposed violation in Kentucky. Id. at 836 n. 14. I fail to see how evidence that four agents committed violations—three of whom were part of the same investigative team—demonstrates a widespread problem. Such anecdotal evidence falls far short of what our precedents require before we will resort to the “extraordinary remedy” of exclusion, especially considering the cost of doing so in this case. Roberts, 779 F.2d at 568. Indeed, at least one of our sister circuits rejected exclusion in the face of similarly scattershot evidence. When the Eleventh Circuit was confronted with five alleged violations of the PCA within the same circuit over a ten-year period, it concluded that this amounted to only a “few” incidents that provided “no basis” for applying the exclusionary rule. United States v. Mendoza-Cecelia, 963 F.2d 1467, 1478 n. 9 (11th Cir.1992), abrogated on other grounds as recognized by United States v. Rainey, 362 F.3d 733, 735 (11th Cir.2004). The argument in favor of exclusion is no more compelling on the record before us.
Finally, the majority opinion cites the government’s litigating position in this case as evidence of “a profound lack of regard for the important limitations on the role of the military in our civilian society.” Maj. op. at 836. Regardless of whether that observation is true, it does nothing to show that there have, in fact, been widespread and repeated violations of the PCA; *842 it simply shows that the government wanted to win this case and put forward the best arguments it could to justify what Agent Logan did here. From the premise that the government believes it has a certain power, it does not follow that the government routinely exercises that power. The government’s litigating position is, therefore, irrelevant to the Roberts inquiry.
Thus, far from having “abundant evidence that the violation at issue has occurred repeatedly and frequently,” Maj. op. at 837, we have before us a paucity of evidence that does not come close to overcoming the “high obstacle for those urging application of the [exclusionary] rule.” Scott, 524 U.S. at 364-65, 118 S.Ct. 2014.
IV
Given the significant costs of exclusion in PCA cases, as well as the meager evidence of PCA violations contained in the record, I would hold that the violation at issue here does not merit application of the exclusionary rule.[4] The majority opinion’s contrary holding ignores the Supreme Court’s clear teaching on exclusion, our own precedents’ stringent test for application of that extraordinary remedy, and the uniform rejection of exclusion by federal courts in the PCA context. Because this case provides no justification for setting a convicted child pornographer free, I respectfully dissent.

. To avoid cumbersome constructions, I will not distinguish between the PCA and its implementing regulations, except where it is necessary to do so.

. Other courts of appeals have recognized that the Supreme Court's description of the exclusionary rule in the Fourth Amendment context applies to PCA cases. See, e.g., United States v. Al-Talib, 55 F.3d 923, 930 (4th Cir. 1995).

. Roberts implied that application of the exclusionary rule in the PCA context could be justified, and I do not question that conclusion here. 779 F.2d at 568. However, I note that there is a strong argument to be made that exclusion is never justified for violations of the PCA. Several considerations might support such an argument, such as (1) the fact that Congress could have provided for exclusion had it thought such a remedy was appropriate; (2) the PCA provides for its own enforcement through criminal sanctions, see 18 U.S.C. § 1385; and (3) "the [PCA] express[] a policy that is for the benefit of the people as a whole, but not one that may fairly be characterized as expressly designed to protect the personal rights of defendants,” Walden, 490 F.2d at 377. However, even assuming that the exclusionary rule could be applied to the PCA context, I believe we do not yet have a reason to do so.

. As for Dreyer’s remaining claims, although I would affirm the district court across the board, I limit my discussion here to the issue addressed by the majority opinion.